MINDS v. KEYES.

1. BROKERS—EVIDENCE—COMMISSIONS.
   In a broker's action for commissions on the sale of real
   property, disputed claims of plaintiff as to an agreement
   between him and defendant, another broker, to divide
   commissions, *held*, to present a question of fact for the
   jury.

2. APPEAL AND ERROR—TRIAL—REQUESTS.
   The Supreme Court will not, in civil causes, consider as-
   signments of error based upon the failure of the court to
   give instructions for which no requests were filed.

3. SAME—NEW TRIAL—DISCRETION—EXTENT REVIEWABLE.
   The action of the trial court in declining to grant a mo-
   tion for a new trial, indicating no abuse of discretion,
   will not be reviewed by this court on writ of error.

Error to Wayne; Mandell, J.   Submitted October 18,
1915.   (Docket No. 140.)   Decided December 22, 1915.

Assumpsit by Hugh L. Minds against George H.
Keyes on a contract to divide broker's fees.   Judgment
for plaintiff.   Defendant brings error.   Affirmed.

*Harry M. Lau* (*Frank H. Watson*, of counsel), for
appellant.

*Prentis & Mulford*, for appellee.

BROOKE, C. J.  This suit was instituted by plaintiff
against defendant for the purpose of recovering from
defendant one-half of a real estate commission received
by defendant from one Mrs. Hovey, upon the sale of
95 Washington avenue, Detroit, for the sum of $52,-
000.   The sale appears to have been made on May 27,
1911.   The property had been listed for several years
by Mrs. Hovey with defendant, and in the fall of 1909

plaintiff claims to have entered into an agreement with defendant by the terms of which he (plaintiff) was to assist in the sale of said Washington avenue property, and if a sale were made he was to receive one-half the commission paid by Mrs. Hovey. It is the claim of plaintiff that some time thereafter he introduced one Stuart to defendant, Stuart then being the owner of a large flat building valued by him at the sum of $55,000, and an effort was made by plaintiff and defendant to accomplish a trade between Stuart and Mrs. Hovey of their several properties, under an agreement that their commissions should be pooled and equally divided. After some negotiations relative to this sale, it was dropped; Mrs. Hovey declining to entertain the proposition. About 1½ years later Mr. Stuart entered into a contract of purchase with Mrs. Hovey for the Washington avenue property. It was plaintiff's claim that subsequent to the failure of the trade he constantly urged Stuart, who was a frequent visitor at his office, to buy the Washington avenue property. This does not appear to have been denied by Stuart, who was a witness upon the trial, although he testifies that he was induced to renew negotiations with Mrs. Hovey by reason of the changed conditions in the neighborhood of the property, involving the erection of a hotel or convention hall, which he believed would require the occupation of the whole block.

Defendant denied the making of the contract for a division of the commission on the sale of the Washington avenue property, and asserted that the only arrangement made between plaintiff and himself was that growing out of the attempt to effect a trade of the flat building belonging to Mr. Stuart for the Washington avenue property belonging to Mrs. Hovey.

The learned circuit judge who tried the case charged the jury, in part, as follows:

"This is an action upon a contract. It does not make any difference what the equities are or the justice of the situation might be, because this action is brought upon what the plaintiff says was an expressed contract, which was oral in its nature, and the plaintiff claims that he performed his part of the contract and has not received his money. His claim in regard to the contract is this: That on a certain occasion in 1909, he and the defendant met. The defendant said: 'I have charge of certain property on Washington Boulevard, and I want you to help me sell it, and if you will help me sell this property I will divide my commission with you.' * * * The defendant says no such contract was ever entered into, and you, gentlemen of the jury, as judges of the facts, will have to determine whether that kind of a contract was ever actually made between the parties, the plaintiff and the defendant. Let us examine the situation and see what it was, because we are often aided in determining issues by seeing what the exact situation is and the relationship of the parties to the situation and all those things are.

"Now, the plaintiff at the time of the negotiations knew a man by the name of Stuart and had certain property belonging to Mr. Stuart in his hands for sale or trade. At the time in 1909 that it is claimed this contract was made, the defendant had charge of certain property belonging to Mrs. Hovey, and it is claimed by the plaintiff that they met, and that the negotiations that led up to this contract all had reference to the sale of the property by the defendant with the aid and active assistance of the plaintiff. Now, we have been told that there were certain propositions with regard to the trade of certain improved property, a flat or an apartment house, for this property. We are told that that deal fell through; we are told numerous interviews were had with the man who purchased the property subsequently with the plaintiff and the defendant, and that these negotiations either totally or in part came to an end. The plaintiff claims that he continued his efforts by offering inducements and active aid and assistance in the sale of this property of Mrs. Hovey's by the defendant. The claim of the defendant, on the other hand, is this:

That they tried to effect a deal, but the only deal they tried to bring about was a trade of the properties of Mrs. Hovey and Mr. Stuart; that these negotiations came to an end in 1909; and that the man who subsequently purchased the property, Mr. Stuart, forgot all about this property; and that the defendant had no further negotiations concerning the sale to Mr. Stuart; and that all those negotiations were at an end; and that a year and a half afterwards Mr. Stuart began negotiations with Mrs. Hovey for the purchase of this property only because of the changed conditions; and that he (Mr. Stuart) was referred to the defendant by Mrs. Hovey, who owned the property.

"Negotiations were carried on wholly and alone by him, unassisted by the plaintiff, and these negotiations culminated some time afterwards in the sale of the property. The defendant says he had no negotiations with the plaintiff whatsoever, except concerning the trade of the property, and he says he never told him that if he would help him or aid him in any way, materially or otherwise, in the sale of the property, that he would divide the commission.   *   *   *

"Should you, after an examination of all the evidence, determine that there was a contract such as the plaintiff claims under, that he was to receive half of defendant's commission in case this property was sold, then you will have to study the evidence to determine whether or not the plaintiff did actually help, was either procuring or effective cause of what subsequently transpired. With regard to that, they dispute one another, and you should consider all of the evidence in the case. Mr. Stuart has told his story. He has told you what brought about his purchase of the property, what induced him to buy it, and you should take that into consideration in determining whether or not the plaintiff actually earned the commission. Now, as I said, it is unfortunate that these people do contradict one another. It is unfortunate that contracts are not all in writing, so that there can be no quibbling or misunderstanding about them; but people do not ordinarily have opportunity to put their contracts in writing, and they did not in this case see fit to do it, and you will have to find out from a study of the evidence what the truth of the controversy is with regard to

the contract itself, and, if the contract did exist, whether or not the money was earned. There can be no separation or division. There is no question of the fact that the defendant did obtain a thousand dollars commission; so, in case the plaintiff is entitled to recover, he is entitled to recover one-half of that with interest due from the date of the last payment, and you will have to study the evidence to determine when it was. The burden of proof is upon the plaintiff. He must establish his case by a fair preponderance of the evidence. If he has failed to prove his case on both of these points that I have mentioned, he cannot recover. If in regard to both of them he has convinced you by a fair preponderance of the evidence, he should recover."

During the trial of the case the record fails to disclose any exception taken on behalf of defendant until the testimony was closed. Thereupon counsel for defendant moved for a directed verdict on four several grounds. The motion was overruled and an exception duly taken. No requests to charge were preferred on behalf of the defendant, and no exception was taken by defendant to the charge as given. Plaintiff having recovered a verdict, a motion for a new trial was made by defendant and denied by the court.

Defendant's assignments of error follow:

"*First.* The court erred in denying the defendant's motion to direct a verdict for said defendant, made at the close of the plaintiff's testimony, on the grounds:

"(A) The failure of the plaintiff to show that he was the procuring cause of the alleged sale of May 27, 1911.

"(B) Because upon the undisputed testimony produced on the trial of said cause, it shows that the proposition as originally suggested, between Stuart and Mrs. Hovey, was for the exchange of properties, which negotiations failed, and the purchase, sale, and exchange of the Hovey property was abandoned in November, 1909.

"(C) Because after the proposition for exchange of properties failed in November, 1909, and was aban-

doned, Mr. Stuart, under the law, was not a customer of Mr. Minds so as to prevent Mr. Stuart and Mrs. Hovey at a subsequent date effecting a sale or purchase of the Hovey property; they both acting in good faith.

"(D) Because the testimony shows that Mr. Minds had nothing to do with the sale of May 27, 1911.

"(E) Because the plaintiff failed to show that his efforts and services were the effective, predominating, efficient means of bringing about the sale of May 27, 1911.

"(F) Because the court erred in not challenging the attention of the jury to the diversity of the alleged contracts claimed by the plaintiff to have been made by him with the defendant.

"(G) Because the court erred in not calling the jury's attention to the fact of the abandonment of the contract for the exchange of properties.

"(H) Because the court erred in not charging the jury that plaintiff was not entitled to recover, because the alleged contract under which he claimed to be entitled to commission was not based upon a legal consideration.

"(I) Because the court erred in denying the defendant's motion for a new trial."

With reference to the first assignment, to the effect that the court erred in denying defendant's motion for a directed verdict, a sufficient answer, we think, is contained in the brief of counsel for appellant, where he says:

"The testimony as to the terms of the contract being conflicting, raised a question of fact for the jury under proper instructions from the court."

With reference to all the assignments numbered A, B, C, D, and E, it may be said that the testimony of the plaintiff was in conflict with that offered on behalf of the defendant, and clearly raised a question of fact for the determination of the jury under appropriate instructions.

Touching assignments F, G, and H, we must hold

that, no requests having been preferred, the court will not in civil cases consider assignments of error predicated upon the failure of the court to give instructions not asked for. *Alderton* v. *Williams,* 139 Mich. 296 (102 N. W. 753). Aside from that, we are of opinion that the charge as given fairly presented to the jury the conflicting theories of the parties and the issues involved.

Assignment of error I, based upon the denial of the motion for a new trial, is without merit. The action of the court, in our opinion, indicates no abuse of discretion, in the absence of which this court will not interfere. *Cooper* v. *Carr,* 161 Mich. 405, 412 (126 N. W. 468).

The judgment is affirmed.

PERSON, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.