COOPER *v.* CARR.

1. NEW TRIAL — TRIAL — MISCONDUCT OF JUROR — PREJUDICE OF JURY.

    Where, during the progress of the trial and before the submission of the case, a juror has made statements outside the jury room concerning the case or evidence offered therein, indicating a fixed opinion unfavorable to the moving party or ill will towards him, it is ground for a new trial, without a showing that the verdict was actually influenced by such improper conduct.

2. SAME—LACHES—FAILURE TO ACT PROMPTLY.

    It is incumbent on counsel to move promptly in the matter upon information, and he may not sit silently by and speculate upon the result.

3. SAME.

    An attorney, who, during the trial, obtains affidavits of prejudiced statements made by a juror, presents them to the trial court and takes time to prepare a motion to discharge the jury, which, meanwhile, appears and announces its verdict, moves with sufficient promptitude.

4. SAME—TRIAL—MISTRIAL.

    The trial court has power even in a criminal case to arrest the trial, determine the legal qualifications of a juror, and may discharge the jury and impanel a new one, to avoid mistrial.

5. SAME—APPEAL AND ERROR—DISCRETION.

    To warrant interference by an appellate tribunal with the discretion of the trial court in denying a new trial, abuse thereof should be so plain that, upon consideration of the facts upon which the trial judge acted, an unprejudiced person can say that there was no justification or excuse for the ruling made.

Error to superior court of Grand Rapids; Stuart, J. Submitted April 19, 1910. (Docket No. 88.) Decided May 7, 1910.

Case by Lena Cooper against Nora Carr for false imprisonment, malicious prosecution, and slander. A judg-

ment for plaintiff is reviewed by defendant on writ of error. Reversed.

*E. J. Doyle*, for appellant.

*Holmes & Holmes* (*M. A. Nichols*, of counsel), for appellee.

Stone, J. This is an action on the case for false imprisonment, malicious prosecution, and slander; the declaration consisting of three counts. The trial resulted in a verdict and judgment for the plaintiff for $2,850 damages. The defendant has brought the case here on writ of error.

There are many assignments of error relating to the rulings of the court in the introduction of evidence, the charge of the court, the refusal to charge as requested, and in denying defendant's motion for a new trial. We find no reversible error in the case except as hereinafter stated.

After the case had been argued and submitted to the jury, and while the jury were in the jury room considering the case, it came to the attention of the attorney for the defendant that one of the jurors, one Jaspers, was strongly prejudiced against the defendant, and had, after being sworn as a juror, made statements to that effect on the first day of the trial, and before any evidence had been introduced on behalf of the defendant. Defendant's attorney presented to the trial judge the affidavits of three men, John Korten, Nicholas Minnema, and William Baker, and moved that the jury be discharged. The said affidavits were all positive in their statements, and were to the effect that the said juror, during a recess of the court, came into the constable's room in the basement of the city hall, and in the presence of at least four men stated that he was sitting as a juror in said cause; that only two Polacks on the jury were for the defendant, but that they would have to fix them; that he asked one of the bystanders if he didn't know the girl (the plaintiff), and stated that he then was ready to give her $2,000, and that the case was freely discussed there, and that the said

juror took part in talking about the plaintiff, and her family, and circumstances. One of said affidavits stated that said juror said on that occasion that the plaintiff got $2,000, in the trial had before, and that he was ready to give her that then.

It appears that while defendant's attorney was in the office of the trial judge reading said affidavits, and presenting orally such motion, the officer in charge of the jury announced that the jury were ready to report; that defendant's attorney there repeated to the court that he desired to make a motion to discharge said jury before a verdict was rendered in the case, and immediately retired to an adjoining room to reduce such motion to writing; that during his absence the verdict was received. The record fails to show that any exception was taken to this action. The defendant, however, presented a motion for a new trial, based in part upon the conduct of said juror, and supported by said affidavits and a further affidavit of Ernest J. Nichols as to the same conversation, in which it was stated that said juror said that he knew the plaintiff, and that she had had hard luck, and that he was then ready to give a judgment for her for $2,000; that there were two Polacks on the jury that he thought would not be in favor of giving the girl (the plaintiff) any judgment, but he would fix them. Said motion stated, among other things, as a reason for setting aside the verdict, that said juror Jaspers on the first day of the trial, and before the evidence of a single witness had been completed, had stated to others outside of the courtroom, during a recess, that he knew the plaintiff and her circumstances, and had an opinion in the case; that said juror was prejudiced in favor of said plaintiff, and was actuated by unworthy motives, and incompetent to sit as a juror in the trial of said cause. Said motion further alleged error in refusing to grant the motion to discharge the jury before they rendered this verdict, when the evidence of the three witnesses—naming them—had been presented in reference to the juror Jaspers.

The counter affidavits are not contained in the printed record, but we have examined them in the original returns. A careful examination of all the affidavits pro and con satisfies us that by a clear preponderance the position of the defendant's attorney in support of his motions was proven. The trial judge denied the motion for a new trial, and filed reasons therefor, from which we quote:

"While the conduct of the juror John Jaspers, as appears from the affidavits submitted, was highly improper and reprehensible, yet I do not consider that such conduct on his part   *   *   *   renders the verdict void, as claimed by counsel for the defendant; nor do I find that the juror Jaspers took any part in seeking to influence the other jurors by personal appeal to them, or that any of the others were *knowingly* influenced by him; yet for some *unaccountable* reason the verdict, it seems to the court, is *clearly excessive and out of all proportion with the evidence of damages submitted.* There was virtually no evidence of false imprisonment, for which the defendant could be held liable, and the evidence as to the slander was confined within such narrow bounds that I cannot see how it could injure the plaintiff to such an extent as the verdict would indicate.   *   *   *   A new trial will be granted unless the plaintiff within 15 days shall file a statement agreeing to remit $2,000 of the judgment, and to accept $850 for damages, together with the costs of suit which may be taxed."

Such remittitur was filed by the plaintiff. The defendant excepted to the refusal to grant the motion, and has assigned error thereon.

We are strongly impressed with the claim of the defendant that, from the facts found by the trial judge upon the motion for a new trial, he should have granted the motion, and that it was not a case for a reduction of damages. He found that the conduct of the juror was highly improper and reprehensible. It was not necessary to find that the other jurors were *knowingly* influenced by Jaspers, in order to make his conduct illegal. May not the so-called "*unaccountable* reason" for the excessive verdict which the trial judge found, be reasonably explained

by the probable conduct of the juror who had shown himself so prejudiced and biased? We think so. It is a well-known rule that where, during the progress of a trial, and before the submission of the case, a juror has made statements outside the jury room concerning the case, or evidence offered therein, indicating a fixed opinion unfavorable to the moving party, or ill will towards him, it is ground for a new trial. 29 Cyc. p. 799; *Tomlinson* v. *Town of Derby*, 41 Conn. 268; *Wightman* v. *County of Butler*, 83 Iowa, 691 (49 N. W. 1041). Nor need it be shown that the verdict was actually influenced by such improper conduct. Where misconduct on the part of a juror which might have been prejudicial has been shown, it is held in many cases that the presumption must be rebutted, by the successful party, to prevent the setting aside of the verdict, or the granting of a new trial; and, whenever the misconduct of the jury can be reasonably supposed to have resulted to the injury of a party, a new trial should be granted. 12 Enc. Pl. & Prac. p. 553; *Collier* v. *State*, 20 Ark. 36; *Luttrell* v. *Railroad Co.*, 18 B. Mon. (Ky.) 291, wherein it is said that a safe rule is to regard the misconduct of the jury as sufficient ground for a new trial, where the party complaining did not connive at it, nor in any manner was instrumental in producing it. *State* v. *Hartmann*, 46 Wis. 248 (50 N. W. 193).

In *Jewsbury* v. *Sperry*, 85 Ill. 56, it is held that, if jurors pending the trial discuss the merits of the case publicly in the presence of others, stating there is no merit in the defense, and that they will find for the plaintiff without regard to defendant's argument or instruction of the court, their conduct will be so improper as to call for a new trial. *Albin Co.* v. *Demorest Manfg. Co.*, 22 Ky. Law Rep. 245 (56 S. W. 982). In this case the affidavits tended to show that some of the jurors indulged in conversation with outsiders touching the matter in controversy, which, if true, was a breach of their duties as jurymen. Statements were made tending to show that a juror said, in substance, that some of them were ready to go over when-

ever a sufficient number could be obtained to find a verdict. This was such misconduct as entitled the defendant to a new trial. In *Blalock* v. *Phillips*, 38 Ga. 216, it was held that the conduct of certain jurors who, while they were charged with a case, conversed with a person not on the jury in the presence of a number of others about the case, and used expressions favorable to the right of the plaintiff to recover, assigning as a reason that defendant, sworn as a witness, had contradicted himself, when in fact he had not, it was held highly reprehensible, and that a new trial should have been granted by the court below on that account. The opinion concludes in these words:

"For the gross violation of this rule in this case the court should not only set aside the verdict, but he should have inflicted exemplary punishment upon the delinquent jurors."

In *Nesmith* v. *Insurance Co.*, 8 Abb. Prac. (N. Y.), 141, it was said that, although a verdict will not generally be set aside because the jury had been approached, if it clearly appear that no injustice had been done and the interference did not affect the result, yet if it appears that they have been approached in such a manner as might influence the verdict, it should be set aside without reference to the source and motive of the interference. During the trial of an action turning upon much conflicting testimony, the jury listened to the statements of a third party attacking the credibility of defendant's witnesses, and it was held that the verdict for the plaintiff must be set aside.

*Pettibone* v. *Phelps*, 13 Conn. 445 (35 Am. Dec. 88). If the misconduct of a juror indicates any improper bias upon his mind, and the court can see that it either had, or might have had, an effect unfavorable to the party moving for a new trial, it is a sufficient ground for setting aside the verdict. *State* v. *Cucuel*, 31 N. J. Law, 249. In this case it is held that, while a verdict will not be set aside on account of the misconduct or irregularity

of a juror, unless it be such that it might affect the others materially, and disqualify them from the proper exercise of their functions, yet if any ground whatever appears for the belief, and even suspicion, that such condition of things existed, a new trial should be freely granted. *McDaniels* v. *McDaniels*, 40 Vt. 363. The friends of the plaintiff in this case had approached the jury, and had expressed their opinions in regard to the merits of the suit, but this without the knowledge of the plaintiff. The court said:

" The plaintiff, as he was unaware of these transactions, is not liable to punishment, but it does not follow from this that he can hold a verdict which is the result of a trial corrupted, though without his fault, by a shameful disregard of the familiar rules which are necessary to a decent administration of the law. The court set the verdict aside, not as a punishment to any one, but in justice to themselves, as well as to the defendant, that the trial may be conducted fairly so that the verdict, when finally rendered, may be entitled to the respect of both parties and the confidence of the court as the result of a trial substantially according to law, and upon the evidence in court. It is true that a verdict should not be set aside for every trifling error of law by the court, or for every trifling misconduct of a juror which occurs without the fault of the prevailing party, but it should be whenever the error or misconduct renders it reasonably doubtful whether the verdict has been legitimately procured."

And the action of the court below granting a new trial was sustained.

It is incumbent on counsel to move promptly in the matter, upon information, and he cannot sit silently by and speculate upon the result. *State* v. *Floyd*, 61 Minn. 467 (63 N. W. 1096); 12 Enc. Pl. & Prac. p. 553; *Sleight* v. *Henning*, 12 Mich. 371. We think that defendant's attorney was not guilty of laches or of a waiver in this case, and that his action was timely. Under the practice which obtained before the present statute, the writ of mandamus was resorted to in such cases. *Churchill* v. *Alpena Circuit Judge*, 56 Mich. 536 (23 N. W. 211).

See opinion of Justice CAMPBELL in this case upon the merits of the question. The trial court has the power, even in a criminal case, to arrest the trial, determine the legal qualifications of a juror, and may discharge the jury and impanel a new one, and thus avoid a mistrial. *People* v. *Parker*, 145 Mich. 488 (108 N. W. 999); *In re Ascher*, 130 Mich. 540 (90 N. W. 418, 57 L. R. A. 806). We are aware of the rule that the granting of a new trial ordinarily rests in the discretion of the trial court, which, if not abused, cannot be interfered with by this court. To warrant such interference, the abuse ought to be so plain that upon consideration of the facts upon which the trial judge acted, an unprejudiced person can say that there was no justification or excuse for the ruling made. *Detroit Tug & Wrecking Co.* v. *Wayne Circuit Judge*, 75 Mich. 360 (42 N. W. 968); *Scripps* v. *Reilly*, 35 Mich. 392 (24 Am. Rep. 575). In that case Justice GRAVES said:

"This court will not revise such matters unless there is plain evidence of action, amounting to what is called an 'abuse of discretion,' and calculated to injuriously affect the legal rights of a party; and, where such is the case, whether the result of accident or inadvertence or misconception, it will take cognizance. The error in this case is one subject to review, and is sufficient to require a reversal."

We are constrained to say that in our opinion the defendant did not have the benefit of such a jury trial as she was entitled to have under the law, that the judgment is not the result of a verdict of an impartial jury, and that defendant was entitled, as a matter of right, to have the same set aside, and that the trial judge, on the facts found by him upon the motion for a new trial, erred in denying the motion, and that such result was not justified, under the circumstances of the case.

The judgment will be reversed, and a new trial granted.

OSTRANDER, HOOKER, MOORE, and BLAIR, JJ., concurred.