EVANS *v.* CITY OF DETROIT.

1. CARRIERS—PERSONAL INJURIES—CREDIBILITY OF WITNESSES.

In action by passenger on street car for personal injuries alleged to have been caused by collision between street car and truck, where there was much conflict and inconsistency in testimony of plaintiff and her corroborating witnesses, their credibility was issue for jury.

2. NEW TRIAL—GREAT WEIGHT OF EVIDENCE—MISCARRIAGE OF JUSTICE.

Where record shows that trial judge was in grave doubt as to whether he ought not to direct verdict for defendants, jury's verdict for defendants cannot be said to have been contrary to great weight of evidence resulting in miscarriage of justice requiring setting aside said verdict and judgment rendered thereon (3 Comp. Laws 1929, § 15518).

3. SAME—MISCONDUCT OF JUROR.

Alleged misconduct of juror in having conversation with third party was insufficient to justify granting plaintiff's motion for new trial, in absence of showing that said conversation concerned plaintiff or any other person connected with case.

Error to Wayne; Gilbert (Parm C.), J., presiding. Submitted June 10, 1931. (Docket No. 20, Calendar No. 35,549.) Decided October 5, 1931.

Case by Beatrice Evans, by next friend, against the City of Detroit, a municipal corporation, and another for personal injuries received while a passenger on a municipal street car. Verdict and judgment for defendants. Plaintiff brings error. Affirmed.

*Bertran J. Coutre* (*Francis W. Allen,* of counsel), for plaintiff.

In criminal case communications between jurors and others as ground for new trial, see annotation in 22 A. L. R. 254; 34 A. L. R. 103; 62 A. L. R. 1466.

*Raymond J. Kelly* and *A. Albert Bonczak,* for defendant city.

*Walter Schweikart* and *Julien Winterhalter,* for defendant Weaver.

NORTH, J. On trial for damages which plaintiff claims to have sustained incident to a collision between a motor truck and a street car on which she was a passenger, the jury rendered a verdict in favor of both defendants, the owner of the truck and the city of Detroit, which municipality operated the street car system. Plaintiff reviews by writ of error.

The collision occurred in the daytime, September 30, 1926, at the corner of Jefferson avenue and St. Jean street in Detroit. The motor truck of defendant Weaver, loaded with brick and constituting a total weight of substantially 14 tons, was proceeding northerly on St. Jean street. The street car train of defendant city, consisting of a motor car and a trailer, was proceeding easterly on Jefferson avenue. There was somewhat of a congestion of vehicular traffic at this intersection, which doubtless had much to do with the occurrence of the accident. A more detailed recital of the circumstances attendant upon this collision is not necessary, because, in our review of this phase of the case, we will construe the record in the aspect most favorable to the appellant by assuming, for the purposes of this decision, that there was testimony which established negligence on the part of one or both of the defendants, which negligence caused the collision which plaintiff claims resulted in injuries to her for which she seeks damages. We think the record is such that we are fully justified in reviewing this case on the assumption that the jury

must have found actionable negligence on the part of one or the other of the defendants; but that their finding against the plaintiff was on the controlling issue as to whether she was injured in the manner claimed and as to the character or extent of such injuries, if any.

As bearing upon plaintiff's claim as to the manner in which she was injured and the character and extent of her injuries, and as disclosing the decided conflict in the testimony on this phase of the case, we quote somewhat at length from the record. Plaintiff testified:

"When I approached the place where I expected to leave the car, I rang the bell and got up and walked to the door and was just about at the door by the conductor when I was all of a sudden thrown back and my head was about a foot from the seats of the front of the car. * * * I fell on my back, but slightly to the left side and broke the fall with my left arm. * * * I couldn't positively say how long I lay there after the fall although I know the conductor had left the car and people had left the car and two ladies helped pick me up. * * * When I fell, I did notice everybody else that was sitting down was thrown to the side, the direction where I fell. * * * I couldn't help myself up. I just laid there kind of stunned and didn't know enough to help myself up. Two women assisted me up, then we went around to look at the accident. I went to the front of the street car to see what had caused the car to stop so quickly and make me fall. * * * At that time I felt all right although my arm was bleeding. * * * I didn't think that I was hurt. I went in the store and told them that I fell and just scratched a little. The bruises turned up later. I purchased the dress and went home. * * * That night I seemed to be physically all right. The next morning I was busy getting ready for the office and didn't pay much

attention. * * * The next day, on Friday, I went to work in the morning. I kept getting worse and all day at the office and that night I was pretty nervous when I come home and the arm was still paining me something terrible. * * * When I first got home from work, I was pretty nervous and I went to the department of street railways to report the accident. I went Friday evening and again Saturday."

Plaintiff was riding in the second car or trailer. The importance of showing exactly what happened to her at the time of the collision has been obvious since the inception of this litigation. In her direct examination plaintiff did not reveal the identity of the "two women" who she claims helped her to her feet after she was stunned by being thrown to the floor of the car. But on cross-examination she testified as follows:

"Q. Now, going to the night of this accident, was anybody in that trailer that you knew?

"A. There were a couple of girls from the office, but I didn't know them personally.

"Q. You knew their names?

"A. From Frederick Stearns & Company.

"Q. Just answer my question—do you know their names?

"A. Yes.

"Q. You knew where they were employed?

"A. Yes.

"Q. Are you going to have these girls in court to testify in this case that was with you the night of this accident?

"A. No, sir.

"Q. Have you made any effort to get them?

"A. I don't know whether any effort has been made or not to get them.

"Q. Have you made any effort to get them?

"A. I have not; no, sir. * * *

"*Q.* The girl at Nyal's was on the street car with you that night?

"*A.* She was on the street car.

"*Q.* How long did you know her?

"*A.* She just worked for the company about a month or two before I left.

"*Q.* She was riding in an easterly direction on this street car?

"*A.* Yes.

"*Q.* Had you ever spoken to her before this night?

"*A.* Yes.

"*Q.* Who were the ladies that picked you up after you were thrown to the floor of the street car?

"*A.* Mrs. Mayer and Miss Wilson. That is when I learned who Miss Wilson was.

"*Q.* Mrs. Mayer is a lady that worked at the Nyal Company?

"*A.* Yes. * * *

"*Q.* Do you know whether she is working there or not; have you gone out there to find out?

"*A.* No."

The conductor on this trailer, a witness in behalf of the defendant, testified:

"The first time that I knew an accident had happened was when the motorman applied the brakes. I immediately looked ahead to see what the trouble was. The car came to a stop and I got out to get witnesses. * * * I did not see anybody fall in the trailer. I did not see anybody being picked up in the trailer of this car. No one reported to me that they fell in this car. * * * I do not recall seeing Miss Evans on that day."

The following testimony of this witness was excluded by the trial judge:

"*Q.* If anybody had a fall and fell backwards in the car, would you have seen them?

"*A.* I believe I would.

"*Q.* Before the car came to a stop if somebody fell backwards to the floor of the car, would you have seen them?"

Plaintiff's objection to the latter question was sustained.

Further testimony in the record is to the effect that, following the accident, plaintiff was treated for her injuries a considerable time by a doctor. As to the character and extent of her injuries plaintiff's testimony was corroborated by that of several other witnesses; but there is so much conflict and inconsistency in this testimony that the credibility of plaintiff and her corroborating witnesses was clearly an issue for the jury. One of the reasons assigned in support of plaintiff's motion for a new trial was that the verdict of the jury was contrary to the great weight of the evidence. In disposing of this phase of plaintiff's motion, the trial judge said:

"Now, with reference to the verdict itself, the finding of the jury and the decision that they made, 'No cause of action,' I believe that that finding was fully justified by the facts in this case. I did have serious doubt about whether this case ought to * * * have gone to the jury or not—but I think it is a better practice, as was suggested then, that we try the case, let the jury pass on it, and we could then take up the question of law in due season. But there was a very grave question under all the facts here, and I think the jury was justified in finding what they did. * * * There was no corroborative testimony produced by this plaintiff of any other passengers in that street car, although she did say that she knew several persons there, as I recall it. It seems most strange that she did not make some

effort, at least, to corroborate her own version of the situation.''

Thus we have a record on which not only the jury found against plaintiff's contention, but the trial judge as to this controlling aspect of the case was in grave doubt as to whether he ought not to have directed a verdict for the defendants. Under the circumstances we cannot say that there was a miscarriage of justice and we would not be justified in setting aside the verdict and judgment rendered thereon in the trial court. 3 Comp. Laws 1929, § 15518.

The view we have taken of this case renders inconsequential appellant's assignments of error having to do with the question of defendants' negligence, and we will not review them in detail. We have considered each of the assignments of error presented by the record, but in our judgment they are not of sufficient gravity to justify reversal. In this connection we have been mindful of the showing made by plaintiff incident to her motion for a new trial wherein misconduct of one of the jurors is charged. This alleged misconduct had to do with a conversation claimed to have occurred between the juror and a third party, but we are thoroughly in accord with the holding of the circuit judge that there was nothing in the showing which would justify the conclusion that the remark concerned the plaintiff or any person connected with the case. Neither this nor the other reasons urged were sufficient to justify granting a new trial.

The above disposition of this case is also necessitated by appellees' motion to dismiss the appeal. We heard the motion with the main case. We will not discuss it further than to say that in the light of our former decision the motion to dismiss should

be granted, but we have preferred to review the record on its merits. Judgment is affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, CLARK, MCDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.