HOSKIN-MORAINVILLE PAPER CO. *v.* BATES VALVE BAG CORP.

1. NEW TRIAL—DISCRETION OF COURT.

A circuit judge has a wide discretion in either granting or refusing a new trial either upon his own motion or that of the parties, somewhat greater latitude being allowed in granting same since it is not a final settlement of the rights of the parties.

2. SAME—ABUSE OF DISCRETION.

An abuse of discretion by the circuit judge in granting a new trial will not be interfered with unless so plain that an unprejudiced person can say there was no excuse for the ruling so made.

3. SAME—MISCONDUCT OF JURORS.

Misconceived celebration of defendant's victory in which seven or eight of the jurors participated for about an hour immediately after rendition of verdict *held,* insufficient cause to grant a new trial where serving of liquor and other acts of defendant's employee and of jurors were not such as to render it reasonably doubtful whether verdict had been legitimately procured and new trial was not otherwise allowable.

Appeal from Menominee; Bell (Frank A.), J. Submitted June 12, 1934. (Calendar No. 37,815.) Decided September 18, 1934.

Action by Hoskin-Morainville Paper Company, a Michigan corporation, against Bates Valve Bag Corporation, a New Jersey corporation, on contract. Verdict and judgment for plaintiff. Defendant reviews order granting new trial by appeal in the nature of mandamus. Reversed.

*George Barstow* (*A. H. Ryall,* of counsel), for plaintiff.

*John J. O'Hara* (*Miller & Kuchenberg,* of counsel), for defendant.

Bushnell, J. Defendant's appeal in the nature of mandamus deals with events which followed the verdict of the jury in the principal case. Plaintiff is a Michigan corporation, domiciled at Menominee, and defendant is a New Jersey corporation, whose principal offices are in New York City.

Three questions were submitted to the jury: (1) Nonpayment of the purchase price of 70 tons of paper; (2) loss of profit on an alleged contract for the purchase of 20,000 tons of paper for the year 1929; and (3) loss of profit on a similar contract for 10,000 tons of paper for the year 1930. The trial began December 4, 1933, and ended December 12th, when, after four hours of deliberation, the jury at 8:30 p. m. returned a verdict in favor of plaintiff for $7,354 on item (1), and no cause of action as to items (2) and (3); the jurymen were then discharged and resumed their status as private citizens. The case was of considerable interest and a number of defendant's employees and officers came to Menominee to attend the hearing. Immediately

after the verdict, counsel and one of defendant's officers met in the chambers of the circuit judge to discuss the question of custodian's fees arising out of the attachment issued in the cause. Plaintiff's counsel, defendant's officer and the trial judge then walked to the hotel where they met defendant's counsel about 9:30 p. m., he having preceded them by automobile, and who immediately informed them that a number of the jurors were in the hotel room of one Douglas, the western sales manager of the defendant, and that liquor was being served. Several more jurors arrived later and visited the same room.

The next morning the trial judge conferred with counsel in his chambers and the inquiry disclosed that seven or eight of the jurors were entertained, the chief executive officer of defendant company stating that he had visited the room and expressed his disapproval of the entire affair. The party, evidently a misconceived celebration of defendant's victory, lasted about one hour, after which time defendant's officers and employees left the hotel to board a train for their respective homes.

Plaintiff moved the court to set aside the verdict and judgment entered, and grant a new trial, assigning various errors in the court's charge to the jury and alleging misconduct of the jury, after its verdict, stating that the contact with the jury was made so quickly and accepted so promptly that the relationship between defendant and members of the jury could only be accounted for on the ground of direct and intimate contact during the trial of the cause. Plaintiff's counsel also executed an affidavit containing all the available facts, which was neither contradicted nor disputed by defendant. We infer that the principal offenders' immediate departure from the jurisdiction of the court explains the ab-

sence of any action for contempt of court, and we presume that the thoughtless jurymen will not be considered qualified for jury service for some considerable time, if at all.

The learned judge, in a well-considered and informative opinion, in referring to plaintiff's allegations of error, stated:

"So far as that part of the action for a new trial is concerned there is nothing in the motion or in the argument of counsel that tends to change my mind as to the correctness of the charge, and I shall hold that the jury was properly charged until the Supreme Court holds otherwise."

And he added:

"I think I am well within the facts when I say that the verdict was supported by the overwhelming weight of the evidence, and I am not at all sure now, although I offer no opinion on it, but that it would have been the duty of the court,—but that it was the duty of the court to direct a verdict for the defendant on both the questions upon which the jury found for the defendant."

The remainder of the opinion is also important and is, therefore, quoted:

"I am satisfied that this entertainment was innocent. I am satisfied that it did not affect the result, and I am satisfied from what I have been advised, or what I was advised on the following morning that the man who furnished the entertainment was advised by counsel that he was doing no wrong in so doing, but, he was ill-advised. It was misconduct. It was, I think, without any doubt a reproach to and a reflection on our jury system and upon our administration of justice which tended to bring the courts and juries into contempt and disgrace.

"I agree with counsel that under the holdings of the court, the Supreme Court of this State, and of

the general holdings laid down by our text writers that, much as I regret it, it is the duty of this court to grant a new trial, and I am going to do it on this ground alone and no other. I do not know that I need to say any more. I am putting counsel in a position to mandamus this court from the Supreme Court if they do not agree with me.

"I think under the rulings of our court that it would be error for me to refuse to grant a new trial on this ground. As I say, I regret it.

"The trial cost the litigants of Menominee a lot of money and it cost the litigants a lot of money. Another trial will cost as much, but, I cannot help that. It is my duty, it seems to me to point it out. I appreciate this is all done after the verdict, and that possibly the court should have directed a verdict as the jury found, nevertheless, I think it is my duty to grant a new trial on this ground, and, making these findings, I do grant a new trial on the ground that this entertainment tended to bring the courts into contempt and reproach, and was a reflection on the administration of justice and upon our jury system. I think that is all I can say. Nobody regrets this more than I do but I must say it."

Had the misconduct occurred during the progress of the trial, there would be no question about the correctness of the order. *Harrington* v. *Calhoun Probate Judge,* 153 Mich. 660; *Solomon* v. *Loud,* 173 Mich. 233 (48 L. R. A. [N. S.] 540); *In re Quinn's Estate,* 180 Mich. 502, and *People* v. *Levey,* 206 Mich. 129. See, also, *People* v. *Montague,* 71 Mich. 447; *Detroit & T. S. L. Railroad Co.* v. *Campbell,* 140 Mich. 384; *Township of Alpena* v. *Mainville,* 153 Mich. 732; *Cooper* v. *Carr,* 161 Mich. 405; *Vincent* v. *Heenan,* 194 Mich. 316, and *Evans* v. *City of Detroit,* 255 Mich. 381. But we have not had occasion to pass upon the question of misconduct occurring after the rendering of the verdict.

It is suggested that there should be but one rule. Where a juror rode during the trial of a cause with defendant to a county home of which the defendant had charge, the supreme court of Iowa said:

"The question involved herein is of a more serious character than would appear at first blush. There is probably no more interesting or fascinating question involved in the history of courts than the origin and development of the jury system. It is one of the most vital elements of our system of government. So far as the average citizen is concerned, he is less in touch with the executive and legislative departments. When he is confronted with private or public differences, he naturally turns to the court for relief. His faith in the courts must be encouraged. When the time comes that our people lose faith in the courts, our form of government is fast nearing its end. It is meet and proper, therefore, that on questions of this kind the ruling should be such as to support the faith of litigants in our judicial system. That faith can only be sustained by keeping our judicial proceedings not only free from wrong, but free from all suspicion of wrong. In other words, all our court proceedings should be, like Caesar's wife,—'above suspicion.'

"The question before us is not a question of whether any actual wrong resulted from the association of this defendant with the juror, under the circumstances related, but whether it created a condition from which the opposing litigants and the general public might suspect that wrong resulted from this association. It is not a question of whether both the defendant and the juror were high-class citizens, and would not be guilty of discussing this lawsuit on this trip, but rather a question of whether or not this conduct should be countenanced by the court." *Lynch* v. *Kleindolph,* 204 Iowa, 762 (216 N. W. 2, 55 A. L. R. 745).

As early as 2 Butler & Hargraves Notes on Coke on Littleton, L. 3, chap. 5, § 366, a distinction was made between acts of jurors during a trial and those occurring after verdict.  The rule there is stated as follows:

"If the jurie after their evidence given unto them at the barre, doe at their owne charges eat or drinke either before or after they be agreed on their verdict, it is finable, but it shall not avoid the verdict: but if before they be agreed on their verdict, they eat or drinke at the charge of the plaintiffe, if the verdict be given for him, it shall avoid the verdict: but if it be given for the defendant, it shall not avoid it, and *sic e converso*.  But if after they be agreed on their verdict they eat or drinke at the charge of him for whom they do passe, it shall not avoid the verdict."

"The vigilance of the court in this case is to be commended.  Certainly everything possible should be done to maintain the highest standards of conduct in the administration of justice.  On the other hand, parties should not be deprived of their rights except for substantial reasons within the well-recognized rules of law."  *Wetzler* v. *Glassner,* 185 Wis. 593 (201 N. W. 740).

We are likewise mindful of the rights of the taxpayers who bear the burden of the costs of operation of our judicial system.  Should they be penalized for the indiscretions and misconduct of parties whose acts had no effect upon the verdict?  The question of reviewing the discretion of trial courts in granting or refusing new trials is a most delicate one.  The rule in this State is that the judge has a wide discretion in either granting or refusing a new trial, either upon his own motion or that of the parties.  *J. L. Hudson Co.* v. *Barnett,* 255 Mich. 465.

"Even greater latitude is allowed the trial court in granting than in refusing new trials, and the appellate court will interfere more reluctantly where the new trial is granted than where it is denied, since in such cases the rights of the parties are not finally settled as they are where the new trial is refused." 4 C. J. pps. 831, 832, § 2813.

"It is true that the Constitution has given this court a general superintending control over all inferior courts, but in the exercise of this jurisdiction it has never been claimed that this court can substitute its discretion for that of the inferior tribunal, and compel it to exercise and enforce our discretion, and not theirs." *Detroit Tug & Wrecking Co.* v. *Wayne Circuit Judge,* 75 Mich. 360.

We are aided by the reasoning in *Re Merriman's Appeal,* 108 Mich. 454:

"The circuit judge found that it did not appear that either of these jurors drank during the time that court was in session, and that it did not appear that their misconduct was incited by, or known to, proponents or their counsel, and, in effect, that their misconduct did not unfit the jurors for the performance of their duty, except as it showed them to be wanting in that sense of duty to themselves and the county which is to be expected of those called to perform the important office of determining rights between litigants. The jurors were part of the regular panel, and, under the circumstances, we are of the opinion of the circuit judge,—that, at least in a civil case, inasmuch as the alleged misconduct did not directly influence the action of the jurors, a new trial should not be granted for this reason. The acts charged against them no more affected their conduct as jurors than as if they had taken place before they were called to serve, and it would be unsafe to set aside a verdict on the grounds of such

misconduct occurring before the jury is called, when discovered after the verdict.''

Mr. Justice STONE must have anticipated our problem when he said:

''We are aware of the rule that the granting of a new trial ordinarily rests in the discretion of the trial court, which, if not abused, cannot be interfered with by this court. To warrant such interference, the abuse ought to be so plain that upon consideration of the facts upon which the trial judge acted, an unprejudiced person can say that there was no justification or excuse for the ruling made.'' *Cooper* v. *Carr, supra,* 412.

The learned judge quoted from *McDaniels* v. *McDaniels,* 40 Vt. 363 (94 Am. Dec. 408), as follows:

''It is true that a verdict should not be set aside for every trifling error of law by the court, or for every trifling misconduct of a juror which occurs without the fault of the prevailing party, but it should be whenever the error or misconduct renders it reasonably doubtful whether the verdict has been legitimately procured.''

We are persuaded by the language just quoted that the misconduct in the instant matter did not render it reasonably doubtful whether the verdict had been legitimately procured.

We would be unmindful of our responsibility if we permitted our disapproval of the stupidity of defendant's employee and the lack of civic responsibility of some of the jurors to interfere with the application of the law. The orderly administration of justice requires that courts be bound by the facts and the law rather than their outraged sense of the proprieties of conduct. The facts in the case at bar are conclusive that the verdict of the jury was

in no way affected by the subsequent improprieties of some of its members. A review of the entire matter requires the conclusion that the learned circuit judge, justly indignant and rightfully zealous of the probity of the court, inadvertently misinterpreted the full effect of the facts. See *Smith* v. *United States* (C. C. A.), 281 Fed. 696, and *Fairmount Glass Works* v. *Cub Fork Coal Co.*, 287 U. S. 474 (53 Sup. Ct. 252), reviewed in 13 Michigan State Bar Journal, p. 387 (January, 1934).

Our suggestion that the order be set aside and a judgment entered on the verdict will no doubt make it unnecessary to issue our writ of mandamus, but such will be issued if required. Appellant shall have its costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.