SLOAN v. KRAMER-ORLOFF COMPANY.

NEW TRIAL—SLANDER.
    Order granting a new trial in action for slander after jury had rendered a verdict for plaintiff is affirmed.

SOURIS, SMITH, and O'HARA, JJ., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted May 8, 1963. (Calendar No. 56, Docket No. 49,869.) Decided November 4, 1963.

Case by Roy Sloan against Kramer-Orloff Co., a Michigan corporation, Ben Kramer, and Richard Orloff for slander. Verdict and judgment for plaintiff. From order setting aside judgment and granting defendants new trial, plaintiff appeals. Defendants cross-appeal. Affirmed.

*Martin Eisenstadt* (*George LaPlata*, of counsel), for plaintiff.

*Charles Rubiner* and *Arthur James Rubiner*, for defendants.

O'HARA, J. (*dissenting*). This is a review of an order granting a new trial in an action resulting in a judgment for slander against the Kramer-Orloff Co., Ben Kramer, and Richard Orloff, in the amounts of $1,500 for damage to plaintiff's feelings, and

REFERENCE FOR POINTS IN HEADNOTE
33 Am Jur, Libel and Slander § 306.

$2,500 for other damages, a total of $4,000. The judgment is joint and several.

The court granted the motion for the new trial on the sole ground that the verdict of the jury was "manifestly against the great weight of the evidence." Defendants cross-appealed seeking mandamus to compel the trial court to grant their motion for a new trial on the specific grounds:

(1) That plaintiff failed to sustain the burden of proof that statements made by the defendants were actuated by either actual malice, or any malice whatsoever;

(2) That the verdict of $2,500 (which cross-appellant designated as being for "loss of livelihood") was grossly excessive;

(3) That the verdict for $1,500 "for injury to feelings" was grossly excessive.

There is a refinement in the third ground that the judgment of $1,500 so far as the corporate defendant is concerned was not "based" on any fair conclusion from the evidence.

Every material allegation of fact in the case is controverted. All of the relevant testimony is in direct and sharp conflict. So far as the list of calendar entries shows, no motion for a directed verdict by defendant was made either at the conclusion of plaintiff's case nor at the conclusion of defendants' case. All motions were made after verdict, and the trial court entered what is designated as a "restatement of grounds for granting the motion for a new trial." Its basic thrust is that in addition to the trial court's conclusion in his first statement that the verdict was manifestly against the great weight of the evidence, the case involved qualified privilege, and for this reason plaintiff was burdened to establish that defendants acted without reasonable grounds for their belief in the alleged slanderous statements. He further held that the

burden on this specific issue was not met. That the trial court felt strongly in the matter is demonstrated by his remarks from the bench—apparently at the conclusion of argument on the motion for a new trial. He said:

"And in all the years I have been sitting here if this isn't against the overwhelming weight of the evidence I don't know what it is."

Appellees and cross-appellants state at page 6 of their brief:

"The judge repeated this conclusion in his 'restatement of the grounds for granting the motion for new trial' (Appellees' Appendix [citing pages] 2b–3b)."

We have read pages 2b–3b assiduously and fail to find the court's statement there included. Whether this is a printer's error or an inadvertence upon the part of counsel for cross-appellant, we do not know. In any event the statement does appear at page 319 of the full transcript filed with us. The statement, we think, should include the context in which the court made it and we add to the truncated version:

"A motion for a new trial on the grounds that the verdict is against the great weight of the evidence can be made even if a motion for directed verdict has been denied. It must go to the jury and then if it is against the overwhelming weight of the evidence the court can grant a new trial. *I couldn't direct a verdict on it. I couldn't do it now.* I would have to give him a new trial, and in all the years I have been sitting here if this isn't against the overwhelming weight of the evidence I don't know what it is." (Emphasis supplied.)

It is apparent that the trial judge recognized, as have we, from the transcript of over 300 pages that factual questions were created and those questions of necessity were submitted to the jury. This brings

us squarely to grip with controlling issues in this case. Do we deal with a question of a verdict against the overwhelming weight of the evidence, or are we concerned with the question of the credibility of witnesses? The first is a question of law reserved to the courts. The second is solely with the trier of the facts—in this case the jury. If the question is the former, we must tread lightly. It is well settled the granting or denying of a new trial is a discretionary matter, and absent the plain abuse thereof, we do not interfere. *Cooper* v. *Carr*, 161 Mich 405, 412. This is the more true in granting than in refusing a new trial. *Hoskin-Morainville Paper Co.* v. *Bates Valve Bag Corp.*, 268 Mich 443.*

The factual background herein is as follows: Plaintiff, a 5-year employee of defendant corporation, was discharged for stealing or complicity in stealing and delivering to a third party for consideration scrap belonging to his employer. The alleged theft and delivery occurred in the early morning before the normal work routine in the scrap yard began. The theft, it is contended, was accomplished by the efforts of plaintiff and a fellow employee named Frank Young. The 2 bags of scrap were loaded in a truck driven to a neighboring scrap dealer and thrown over his fence before his place of business opened. The money therefor was picked up by Young later in the day, given to an unidentified friend, with instructions to deliver it to his, Young's, wife. On the day in question, Jerome Robbins, a customer of defendant corporation who occasionally collected and stored scrap in the company yard, was preparing his scrap for sale when he noticed some was missing. Apparently not unfamiliar with the

---

* In this case the trial judge was reversed but for an entirely different reason than is here involved. No evidentiary question was there presented; rather the alleged misconduct of several jurors *after* verdict.

*modus operandi* of scrap thieves, he went to the nearest scrap dealer, a Joseph Olshansky. In Olshansky's building he saw and recognized the missing scrap. After first denying he knew the source of the material, Olshansky admitted to Robbins that he "got it off a couple of Kramer-Orloff drivers," but declined to identify them. Robbins returned to defendants' office and related the foregoing to Messrs. Orloff (Richard) and Kramer (Ben and Irving). Olshansky was thereafter called to defendant company's office where he identified the 2 Kramer-Orloff employees; in consequence plaintiff and Young both were discharged though Young was later rehired.

It is plaintiff's contention that he was an innocent foil. He claims he was unaware that the bags contained stolen scrap. He stresses that he was a helper and yard man with no familiarity with delivery techniques and suspected no irregularity. He claims Young solicited his aid in bringing out the scrap because the regular helper did not show up the morning in question. In support of his position, he testified as to minimal schooling in the deep South as explaining his apparent naivete. He testified point-blank that the company was out to get him and related 3 incidents in support thereof. First, when for some trifling mistake in moving a trailer, defendant Orloff said "You black nigger get out of here or I will break your neck." On another occasion he alleges Irving Kramer kicked him—and that he—plaintiff "drawed" a pick on him. He related a third incident involving a dispute over the amount of a check and ascribes to defendant, Ben Kramer, the statement "You black nigger, you get out of here."

Buttressing plaintiff's contention are the following testimonial excerpts and facts of record: Witness Olshansky, who identified plaintiff as 1 of the 2 men who sold him the stolen scrap, completely repudiated a notarized statement to this effect and

to the further effect that plaintiff had sold scrap to him many times before. He contended he signed it in blank at the request of defendant company so they could appeal "a case"—apparently an award to plaintiff of employment security benefits. The statement was typed and Olshansky denied he ever knew what was in it. A witness, John Markowsky, disinterested so far as the record shows, testified that Messrs. Kramer and Orloff had "a paper for me to sign" that plaintiff had been stealing but that he, Markowsky, refused because so far as he knew plaintiff "never stole nothing." Mrs. Sloan testified that after Young and plaintiff were discharged, Young came to the Sloan home and she asked him what "he and Roy did yesterday." She alleges that Young said:

"Roy did not do anything  *  *  *  Kathleen I am so sorry to get Roy in this mess but with those 3 big men breathing down my back I had to say something."

Mrs. Sloan then says she asked Young:

"Why don't you go and tell your boss what really happened."

She claims Young replied:

"I am sorry, if I don't get back to work, there is me and my wife and I have children to think about, and that is the reason, I am so sorry. Roy had nothing to do with it."

Contrariwise, Young freely confesses his participation in the theft. He claimed Sloan induced him to take the scrap out; promised him it would be the last time; instructed him to pick up the money at Olshansky's; tried to induce Sloan to "come clean" because he, Young, had told defendants the whole story.

Mrs. Young's version is that Mrs. Sloan ruefully admitted:

"I am absolutely sorry Frank [Young] loses through Roy * * * I told Roy over and over about that stealing."

Defendants point to the fact that the completely disinterested witness Robbins overheard plaintiff confess; that it is utterly preposterous that a 5-year employee of a scrap dealer to contend he didn't know that throwing unweighed, untagged, sacks of junk over a fence in the darkness wasn't highly unusual; that Messrs. Kramer and Orloff had many Negro employees, never exhibited any animus toward them as a race; they claim plaintiff's equivocal testimony relating to the number of garnishments and to the number of incidents of domestic difficulty destroyed, or at least impugned, his credibility. Without detailing more testimony, it can be said that the record is replete with point-blank contradictions and outright charges and countercharges of perjury and bad faith, some spontaneously shouted from the courtroom, some in response to examination.

In the turbulence of all this conflict, the basic factual issue must be clearly set forth. It is: Did defendants here have reasonable basis to believe that plaintiff stole from them, and are they thus excused from their limited publication of the slanderous statement? On this factual issue the jury found for plaintiff and by its finding answered "No."

The trial judge by his grant of the motion for a new trial concluded that this jury finding was against the "overwhelming" weight of the evidence. By granting the motion he said "Yes." The grant of the motion was an exercise of judicial discretion. The legal test to be applied is whether such action was an abuse of that discretion. However phrased or however postulated we get back to an evaluation of the testimony bearing on the controverted fact question above set out.

Despite appellate court's effort to create distinguishable categories in this field of setting aside verdicts as against the "great weight" or "overwhelming weight" of the testimony, the nagging proposition remains: Where conflicting competent evidence is received the issue of credibility of the witnesses is implicit in determining great weight or overwhelming weight of that evidence. It is the rare case, indeed, where the mystic borderline is crossed, and the ever so difficult to define area is reached, where the court having concluded as he did here that controverted fact issues were created, may repudiate the jury's finding.

Oftentimes, as here, the judicial mind does not arrogate that same degree of credibility to a witness or witnesses as does the composite lay mind of the jury. In 1881, Mr. Justice CAMPBELL wrote:

"Courts cannot assume that the witnesses whom they would most credit are to be followed by the jury. And however much they may be discontented with the result, they cannot usurp the functions of the jury." *Marcott* v. *Marquette H. & O. R. Co.,* 47 Mich 1, 7.

Half a century and more later, Mr. Justice BUSHNELL noted that the Supreme Court, too, is powerless under our system to test credibility:

"The testimony   *   *   *   is in direct conflict *   *   * and was impeached to some extent. However, it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it. The credibility of witnesses is for the jury, and it is not for *us* to determine who is to be believed." (Emphasis supplied.) *Anderson* v. *Conterio,* 303 Mich 75, 79.

To whatever extent the trial court or this Court might be disinclined to believe plaintiff's witnesses,.

we—neither of us—may substitute our standards of credence for the constitutionally guaranteed jury determination thereof.

In support of his finding that the jury's verdict on this issue was against the great weight of the evidence, the trial judge wrote:

"Plaintiff in his own testimony admits that he and his fellow employee, Frank Young, took these sacks of metal and threw them over the fence at Olshansky's junk yard early in the morning before Olshansky was open for business * * * that he, * * * [the fellow employee] accused plaintiff of being the instigator * * * that * * * [plaintiff] had sold * * * [Olshansky] such scrap on numerous occasions previously. * * * That when the deposition of plaintiff was taken he never claimed that the defendants had made derogatory remarks about his race."

Each 1 of the above assertions of fact was controverted by explanatory testimony of plaintiff, and by the repudiation of Olshansky of his notarized statement.

From the bench the court added:

"After they find the scrap and he tells them, at least they have an affidavit from him, signed, in which he says he has been buying scrap from them before, and so he comes over that morning and tells them, yes, they have been selling scrap before, and then you call in the driver and the driver says, yes, I stole it and he helped me steal it, in fact, he started it, what man in the world wouldn't believe or wouldn't have reason to think that the plaintiff was stealing?"

It must be remembered in this connection that the good faith of the employer was placed in issue. The very bases advanced by defendants as supporting their belief of the plaintiff's guilt was challenged.

The essential thrust of plaintiff's case is that he was framed. It is his claim that defendants were out to "get him," and that so to do they typed out the statement for Olshansky to sign, induced him to sign it in blank and later filled it in and had it notarized. Thus under the theory of plaintiff's case the notarized statement could afford defendants no basis for belief in plaintiff's guilt.

After a careful review of the whole record, we conclude in response to our previously postulated query that the issue posed in the case at bar was not, and is not, a question of the "great" or "overwhelming" weight of all the evidence but rather a question of the credibility of witnesses testifying to diametrically opposed assertions of fact. So concluding we must, despite any misgivings or inclinations to disagree, leave the test of credibility where our system reposed it—in the trier of the facts.

There is left the cross-appeal of defendants-appellants. We find commentative merit only in the question of the amount of the verdict. In this connection an error appears in the trial court's restatement of grounds for granting a new trial. The trial judge stated that publication of the slanderous statement was limited to a "fellow employee * * * and to a *prospective* employer." The latter part of the statement is incorrect. Michael Sparks testified:

"On June 24, 1958 *I hired* him [plaintiff] * * * when he [one of the Messrs. Kramer] said he fired him because he was stealing * * * naturally in a case like that *I let him go.*" (Emphasis supplied.)

Plaintiff lost actual employment, not the prospect of a job. This is relevant to the issue of damages, as it was followed by testimony of plaintiff's hourly wage and days worked per week. This discrepancy must be noted here also by reason of the wording of

appellant's statement of the question involved which adverts to loss of income.

The jury separated the verdict as instructed into actual damages and damages to reputation or "feelings." Admittedly the latter is difficult of computation, but so in truth, is compensation for pain and suffering. There is almost a sense or a "feel" for excessiveness which bespeaks recriminatory or punitive jury action. It has been phrased as "shocking the judicial conscience." However phrased the element of excessiveness does not appear here.

*Schattler* v. *Daily Herald Co.,* 162 Mich 115, discusses the element of damages in cases of this type and it is accurately noted in the syllabi:

"9. Good faith in the publication of a libelous charge in no way affects the defendant's liability to compensate the plaintiff for his actual damages to reputation or feelings.

"10. Actual damages may be increased by reason of malice of the defendant, on the theory that the injury to the feelings is greater from a wrong wantonly inflicted than from a wrong done in good faith."

We detect no evidence of jury disregard for the limits of awardable compensation under the testimony relating to damages.

The order of the trial court granting a new trial should be reversed and set aside. The case should be remanded with directions to enter judgment on the jury verdict. Appellant may tax costs.

Souris and Smith, JJ., concurred with O'Hara, J.

Kelly, J. At the outset of this opinion I bring into focus the following statements from the opinion to which I dissent:

"The alleged theft and delivery occurred in the early morning (6:00 a.m., March 20, 1958) before the normal work routine in the scrap yard began (also 1 hour before plaintiff's time to commence work for defendant). * * * The 2 bags of scrap were loaded in a truck driven to a neighboring scrap dealer and thrown over his fence before his place of business opened."

"It is plaintiff's contention that he was an innocent foil. He claims he was unaware that the bags contained stolen scrap."

"In support of his position, he testified as to minimal schooling in the deep South as explaining his apparent naivete."

"The essential thrust of plaintiff's case is that he was framed."

"The completely disinterested witness Robbins overheard plaintiff confess."

"Messrs. Kramer and Orloff had many Negro employees, never exhibited any animus toward them as a race."

Reference is made in the opinion to the testimony of Michael Sparks. To show how defendant happened to inform Sparks concerning the plaintiff, we quote from Sparks' testimony as follows:

"On June 24, 1958, I hired him (plaintiff) through the recommendation of his father-in-law, and when I went to make out the rest of the papers for him I asked him for his previous employment and he told me Kramer-Orloff.

"*Q.* I see.

"*A.* So I called Kramer-Orloff and asked, for— well, for a reference. * * *

"*Q.* What did he say?

"*A.* He said he couldn't give no reference; that he fired him because he was stealing from the premises, and that is all he could give me."

I am in accord with the following quotes from my Brother's opinion, which clearly show that the trial court was justified in labeling this litigation as a most unusual trial:

"Every material allegation of fact in the case is controverted. All of the relevant testimony is in direct and sharp conflict. * * *
"Without detailing more testimony, it can be said that the record is replete with point-blank contradictions and outright charges and countercharges of perjury and bad faith, some spontaneously shouted from the courtroom, some in response to examination."

I disagree with the conclusion that the trial judge in determining a motion for new trial on the grounds that the verdict is against the great weight of the evidence must weigh all evidence, must count the number of witnesses for plaintiff and defendant, must accept as the truth all the testimony irrespective as to how absurd or preposterous it may be, on the grounds that the credibility is solely for the jury and, if it is good enough for the jury, it must be good enough for the judge.

Neither can I subscribe to my Brother's statement that: "To whatever extent the trial court or this Court might be disinclined to believe plaintiff's witnesses, we — neither of us — may substitute our standards of credence for the constitutionally guaranteed jury determination thereof."

In 2 MLP, Appeals, § 340, p 231, it is said:

"In determining whether the trial judge correctly ruled on a motion for new trial, the Supreme Court will bring to the support of his decision all reasonable presumptions which arise from his superior opportunity to determine the credibility of the witnesses. It is presumed that the trial court correctly measured the credibility and the mental capacity

of the witnesses, and that the trial court reached a correct conclusion in determining whether a verdict was against the clear weight of the evidence." (Citing cases.)

. This Court in *Jaeger* v. *Mitchell*, 277 Mich 464, in the year 1936, made it clear that in determining motions for new trial we expected the trial judge to take advantage of "his superior opportunity to determine the credibility of the witnesses." In that case we said (pp 466, 467):

"Mandamus will lie to compel a trial judge to vacate an order improperly made, granting a new trial. The general rule in this regard, however, precludes us from interfering with the exercise of discretion by the trial judge unless there is a flagrant abuse thereof. In *People, ex rel. Shimer,* v. *Branch Circuit Judge,* 17 Mich 67, it was held:

" 'We are of opinion  *  *  * there was something upon which the circuit judge was called upon to exercise his judgment; and that being so, the question whether a new trial should be granted is one addressed to his discretion, and the Supreme Court has no authority to review his conclusion, and compel him by mandamus to rescind his order.' (Citing numerous cases.)  *  *  *

"It is equally well settled that the Supreme Court will intervene to correct a gross and palpable abuse of discretion. *Detroit Tug & Wrecking Co.* v. *Wayne Circuit Judge,* 75 Mich 360."

What has previously been said was forcibly reiterated in the recent case of *Alder* v. *Flint City Coach Lines, Inc.* (1961), 364 Mich 29. Three of our present Justices spoke in this case, Justice SOURIS, quoting from *Hoskin-Morainville Paper Co.* v. *Bates Valve Bag Corp.,* 268 Mich 443, 449, stating (p 30):

" 'The question of reviewing the discretion of trial courts in granting or refusing new trials is a most delicate one. The rule in this State is that the

judge has a wide discretion in either granting or refusing a new trial, either upon his own motion or that of the parties.' "

Justice CARR stated (p 38):

"This Court has repeatedly held that a trial judge, in passing on a motion for a new trial, is vested with a large discretion.   The wisdom of such rule is obvious.   The judge has the advantage of seeing the witnesses on the stand, of listening to their testimony, of noting the attitude of the jury to various matters that may arise during the trial, and is in far better position than. is an appellate court to-pass on questions of possible prejudice, sympathy, and matters generally that occur in the course of a trial but which do not appear of record.   In commenting on the discretion of the trial court, it was said in *Graeger* v. *Hager,* 275 Mich 363, 368:
" 'This court will not interfere unless the abuse of that discretion is palpable.   (Citing several prior decisions.)' "

Justice BLACK spelled it out as follows (pp 39–41):

"Plaintiff has failed to persuade that the trial judge's order for new trial constituted an abuse of discretion.   The judge was 'there.' We were not.  He knew and knows, better than we may hope to know by reading (distinguished from watching and listening) the adduced medical testimony, whether this case should be retried.   We have noted before, on many variant occasions, that a trial judge is in much better position to judge questions like this since our sole means of information is limited to the comparatively inferior worth of printed—no, 'dehydrated'—pages.
" 'The hesitant word and the averted glance stand on a parity, on the printed page before us, with the positive assertion and the forthright expression. Not so in the mind and conscience of the *nisi prius* judge.'   *   *   *

" 'The rule as to when this Court will interfere with the action of the trial court in disposing of motions for new trials was so clearly stated by Justice Carpenter in *Hintz* v. *Michigan Central R. Co.,* 132 Mich 305, that it is not necessary to restate it here.' "

Justice Talbot Smith also forcibly spoke on the question of "abuse of discretion" in *Spalding* v. *Spalding,* 355 Mich 382, 384:

"In view of the frequency with which cases are reaching this Court assailing the exercise of a trial court's discretion as an abuse thereof, we deem it pertinent to make certain observations with respect thereto in the interests of saving expense to the litigants and avoiding delay in reaching final adjudication on the merits. Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

The opinion states: "The grant of the motion was an exercise of judicial discretion. The legal test to be applied is whether such action was an abuse of that discretion."

I agree with my Brother as to his determination of the main issue before us on this appeal, but I disagree with him on his conclusion. The trial court in this case did not abuse its discretion in

determining that the motion for new trial should be granted.

Affirmed. Costs to appellees.

Carr, C. J., and Dethmers, J., concurred with Kelly, J.

Black, J. (*concurring in affirmance*). I concur in affirmance, noting again for cumulative reference that this is another case where the *defendants,* not the *plaintiff,* have succeeded in obtaining an order for new trial. See like comment in *Herman* v. *Ploszczanski,* 369 Mich 252 at 260.

Kavanagh, J., concurred with Black, J.