# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT MARQUIS STOWE,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2015

No. 319874
Oakland Circuit Court
LC No. 2012-242604-FC

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of armed robbery, MCL 750.529, for which the trial court sentenced him to a prison term of 27 months to 15 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was convicted of the armed robbery of Juwante Styles shortly after 1:00 a.m. on July 5, 2012. According to Styles, two people approached him on the street and robbed him at gunpoint. Styles was unable to identify the assailants, but he saw that one robber wore a black hooded sweatshirt and the other wore a red hooded sweatshirt and had a surgical mask on his face. The person with the black hooded sweatshirt held a gun to Styles's head while the person with the red-hooded sweatshirt and surgical mask went through Styles's pockets. Styles identified the voice of one of the robbers as that of a male. The robbers took Styles's wallet, cigarettes, and cell phone.

Approximately 20 minutes after the robbery, less than a mile from the robbery scene, the police encountered defendant on the street. He was breathing heavily and sweating profusely. The police saw a red hooded sweatshirt and a black hooded sweatshirt on the ground near defendant, and they discovered Styles's wallet and cell phone, and a surgical mask, in defendant's pants pocket.

Defendant testified at trial and denied participating in the robbery. He claimed that he had loaned a red-hooded sweatshirt to a friend known as "Flint," and that Flint had returned that sweatshirt, and had also given him the black hooded sweatshirt, shortly before the police arrived. After Flint left, according to defendant, he discovered a wallet and cell phone in the clothing and assumed that they belonged to Flint, or to Flint's friend. Defendant admitted that he had lied to

-1-

the police when he told them at the scene that he had found the wallet and phone in the street, and that his girlfriend have given him the surgical mask.

The jury convicted defendant, and this appeal followed. In the sole issue before this Court,[1] defendant argues that the jury's verdict is against the great weight of the evidence, and therefore, that the trial court erred in denying his motion for a new trial on this ground.

## II. STANDARD OF REVIEW

We review the trial court's denial of defendant's motion for a new trial for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court's decision results in an outcome outside the range of reasonable and principled outcomes. *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009).

## III. GREAT WEIGHT OF THE EVIDENCE

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). Such a motion should be granted "only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Unger*, 278 Mich App at 232.

Defendant argues that the trial court's comments at sentencing, in which the court expressed its view that defendant's trial testimony appeared to be credible, supports his argument that he is entitled to a new trial. We disagree. In *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998), our Supreme Court held that "a trial judge does not sit as [a] thirteenth juror," *id*. at 627, and "the trial court may not substitute its view of the credibility [of witnesses] 'for the constitutionally guaranteed jury determination thereof.' " *Id*. at 642, quoting *Sloan v Kramer-Orloff* Co, 371 Mich 403, 411; 124 NW2d 255 (1963). The trial court properly applied this principle in denying defendant's motion for a new trial, when it stated that "[t]he fact that I would not have found the defendant guilty doesn't mean that I get to overturn the jury's verdict."

Although the victim was unable to identify the two assailants, he testified that one assailant wore a red hooded sweatshirt and the other wore a black hooded sweatshirt and a surgical mask, and that the assailants stole his wallet and cell phone. Approximately 20 minutes after the robbery, the police encountered defendant on the street, in proximity to where the robbery had occurred. A red hooded sweatshirt and a black hooded sweatshirt were on the

---

[1] Defendant's appellate brief also contains a request to remand for correction of the presentence investigation report (PSIR). After defendant filed his claim of appeal, however, this Court granted defendant's motion to remand. On remand, the parties stipulated to correction of the PSIR and, in an order entered on October 2, 2014, the trial court ordered that the PSIR be corrected as specified, that the corrected PSIR be sent to the Michigan Department of Corrections, and that the old copy of the PSIR be destroyed. Because defendant has already received his requested relief on this issue, it is moot. See *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003).

ground near defendant, and the victim's cell phone, wallet, and a surgical mask were located inside defendant's pants pocket. Defendant was breathing heavily and sweating profusely. Defendant's proximity to the robbery location shortly after the robbery was committed, together with his physical appearance, the presence of the hooded sweatshirts similar to what the robbers were wearing, and defendant's possession of the victim's wallet and cell phone, and of a surgical mask similar to what one of the robbers wore, constituted strong circumstantial evidence linking defendant to the robbery. A jury properly may consider circumstantial evidence and reasonable inferences arising from that evidence in determining a defendant's guilt or innocence. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). A reviewing court should not interfere with the trier of fact's role of determining the inferences that can be drawn from the evidence and the weight of those inferences. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

Defendant recognizes that, in *Lemmon*, our Supreme Court stated that conflicting testimony or questions regarding witness credibility generally are not grounds for a new trial, but he observes that the Court also recognized that a new trial may be granted in exceptional cases, such as where "testimony contradicts indisputable physical facts or laws," "testimony is so patently incredible or defies physical realities," testimony is "so inherently implausible that it could not be believed by a reasonable juror," or "testimony has been seriously 'impeached' and the case marked by 'uncertainties and discrepancies.' " *Id*. 456 Mich at 643-644 (citations omitted). These principles are not relevant to this case. Defendant did not dispute the credibility of the prosecution's evidence regarding defendant's proximity to the robbery shortly after the robbery was committed, or his possession of items linking him to the robbery. Instead, defendant offered arguable explanations for this evidence (i.e., that he had loaned the red sweatshirt to Flint earlier in the day, that Flint had given both sweatshirts to him shortly before the police arrived, and that he had found the stolen property in the clothing when Flint returned it). Thus, this case hinged on the credibility of defendant's proffered exculpatory testimony. The credibility of defendant's explanations was a question for the jury to resolve, and the jury was free to reject defendant's testimony. *People v Henderson*, 306 Mich App 1, 13; 854 NW2d 234 (2014). Moreover, defendant admitted that he lied to the police when he initially told them that he had found the victim's cell phone and wallet on the street, and that his girlfriend had given him the surgical mask because he had asthma. "A jury may infer consciousness of guilt from evidence of lying or deception." *Unger*, 278 Mich App at 227. It is apparent that the jury disbelieved defendant's testimony and, as previously indicated, the trial court properly declined to substitute its view of credibility for the jury's determination thereof. *Lemmon*, 456 Mich at 642.

In sum, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand, and the trial court properly recognized that it was not permitted to substitute its view of defendant's credibility for the jury's determination thereof. *Id*. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial. *Unger*, 278 Mich App at 232.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell

-3-