PATZKE *v.* CHESAPEAKE & OHIO RAILWAY COMPANY.

1. New Trial—Discretion of Court—Miscarriage of Justice.

A trial judge is empowered to grant a new trial if in his opinion, after an examination of the entire cause, the court should decide there has been a miscarriage of justice (CL 1948, § 650.28).

2. Same—Discretion of Court.

A circuit judge has a wide discretion in granting or refusing a new trial either upon his own motion or that of the parties, somewhat greater latitude being allowed in granting same since it is not a final settlement of the rights of the parties.

3. Release — Federal Employers' Liability Act — Burden of Proof — Instructions — New Trial.

Plaintiff employee in an action under the Federal employers' liability act against defendant railroad company has the burden of showing release interposed as a defense was invalid, hence, instruction that defendant had the burden of showing it to be valid was reversible error and justified the trial court in granting a new trial (45 USC [1958 ed], § 51).

Appeal from St. Clair; Kane (Edward T.), J. Submitted June 5, 1962. (Docket No. 1, Calendar No. 48,724.) Decided December 3, 1962. Certiorari denied by the supreme court of the United States May 13, 1963.

Case by Frank Patzke, Jr., against the Chesapeake & Ohio Railway Company, a Virginia corporation, for personal injuries sustained while employed as a

References for Points in Headnotes

[1] 39 Am Jur, New Trial § 26.
[2] 39 Am Jur, New Trial § 201.
[3] 45 Am Jur, Release § 45.

brakeman and engaged in switching operations incident to interstate and foreign commerce. Verdict for plaintiff. Defendant's motion for new trial granted. Plaintiff appeals. Affirmed and remanded for new trial.

*Bush & Bradt* (*D. Dean Luce,* of counsel), for plaintiff.

*Robert A. Straub* and *Robert B. Seeley* (*Davidson, Osborn & Staiger,* of counsel), for defendant.

KELLY, J. This Federal employers' liability action resulted in a jury verdict of $118,000 for plaintiff. The trial court granted defendant's motion for new trial, stating:

"It appearing to the court that for the reasons set forth in defendant's motion for a new trial and because it is the court's belief that a miscarriage of justice has resulted, a new trial is and the same is hereby ordered."

Plaintiff appeals, contending the trial judge abused his discretion in granting a new trial.

Plaintiff testified that he had been thrown off the top of a box car (December 3, 1955) by a defective hand brake.

Defendant introduced testimony that shortly after the fall plaintiff stated that while he was descending from the car his hold slipped and he fell to the ground. Approximately 6 weeks after the accident plaintiff gave defendant a written statement (January 17, 1956) in regard to the accident, which reads in part:

"As this car was coming towards me, it was traveling along about 2 or 3 miles per hour and I got on in the usual manner on the south and west side of the car after which I climbed up the side ladder and

stepped around the corner of the car into the end ladder, after which I got up on the brake platform and when the car had run in the clear of the scale track I set the brake and stopped the car after which I started to climb down, at which time my right foot was resting on the brake platform, and my left foot was resting on one of the hand holds in the end ladder and with my left hand I was holding onto the roof grabiron or hand hold, and I let go of the brake wheel with my right hand and as I was reaching for the roof grabiron with it, my left hand slipped off of the roof grabiron or hand hold and I fell to the ground on the west side of the track landing on my feet and from there I fell on my back."

Plaintiff claims that the statement is false and that he falsified it because he was in dire need of money, and feeling the exigencies of fast mounting bills and the needs of his family, he sent for Mr. Wallace (defendant's claim agent); that before Mr. Wallace would talk of paying plaintiff any money at all he said he would have to have a statement as to how the accident happened. After he signed the statement, plaintiff was paid $500 by defendant.

Plaintiff signed a release of claim against defendant (February 27, 1956), and we quote the following from plaintiff's statement of facts and defendant's counterstatement, as set forth in the respective briefs submitted to this Court. Plaintiff states:

"Plaintiff was told by the railroad doctors that he was in such condition of recovery that he would be able to return to work by March 15, 1956. On February 27, 1956, Mr. Wallace (defendant's claim agent) came to plaintiff's home to make a settlement of the claim. Mr. Wallace telephoned both of the railroad doctors and was told by each doctor that he was positive plaintiff would return to work on March 15, 1956. Mr. Wallace communicated this information to plaintiff. Mr. Wallace then prepared a re-

lease of all liability to be signed by the plaintiff for the purpose of relieving the defendant of all liability for plaintiff's injuries. Plaintiff received another $600 which was to cover his loss of wages up to March 15, 1956 on a 75% basis.

"Before signing the release plaintiff asked Mr. Wallace what would be the situation if he were unable to return to work on March 15, 1956. Mr. Wallace said that in such case the release would be destroyed and plaintiff's case would be reopened. At the time he made this statement about destroying the release Mr. Wallace knew that he had no such authority and could not destroy the release or reopen plaintiff's case.

"On the strength of Mr. Wallace's promise to destroy the release and reopen his case and believing the truth of the railroad doctor's assertions as to his state of health, plaintiff signed the release and received $600 from Mr. Wallace. This release was used at trial by the railroad company to defend this case. On March 15, 1956, plaintiff was unable to return to work. Subsequently on 3 separate occasions he was paid the sum of $300 by Mr. Wallace on behalf of the railroad company. Each time he received a $300 check from defendant plaintiff was required to sign a receipt stating that the same was to be 'credited against settlement or judgment when made.' In July of 1956 Mr. Wallace offered plaintiff $148 as a 'final settlement' of plaintiff's claim. This was refused by plaintiff.

"When plaintiff subsequently consulted his own physician and learned the extent of his disability he requested that the release be destroyed and his claim reopened. The release was never torn up by defendant and plaintiff's case was never reopened."

Defendant says:

"That it is railroad policy to pay injured employees a percentage of their wages regardless of fault on the part of the railroad; that the railroad always assumed any and all medical expenses and he

[Mr. Wallace] advanced the various sums to plaintiff in accordance with this policy and because plaintiff was in need. Mr. Wallace obtained a release from plaintiff and it was *after* it was executed and delivered to Mr. Wallace that there was any conversation with respect to paying additional sums to plaintiff if he did not return to work; and any such promises made to plaintiff were carried out. Plaintiff never told him the brake threw him off the car or that there was anything wrong with it; he testified that the only promises to plaintiff were that if he could not return to work by March 15, 1956, he would see if he could get further consideration.

"Plaintiff is capable of doing a clerk's job and was offered one by the defendant railroad but insisted that he be guaranteed a permanent job and that he would not lose his seniority as a switchman which is impossible for the railroad to guarantee because of the union contract."

The legislature provided (CL 1948, § 650.28 [Stat Ann 1943 Rev § 27.2618]) that the trial judge be empowered to grant a new trial if "in the opinion of the court, after an examination of the entire cause" the court should decide there has been "a miscarriage of justice."

In *Cooper* v. *Carr,* 161 Mich 405, this Court stated the trial court's decision would be upheld unless there was no justification or excuse for the ruling, stating (p 412):

"We are aware of the rule that the granting of a new trial ordinarily rests in the discretion of the trial court, which, if not abused, cannot be interfered with by this Court. To warrant such interference, the abuse ought to be so plain that upon consideration of the facts upon which the trial judge acted, an unprejudiced person can say that there was no justification or excuse for the ruling made."

We recognized a greater latitude in granting than in refusing new trials in *Hoskin-Morainville Paper*

*Co.* v. *Bates Valve Bag Corp.*, 268 Mich 443, 450, by quoting with approval 4 CJ, Appeal and Error, § 2813, pp 831, 832:

" 'Even greater latitude is allowed the trial court in granting than in refusing new trials, and the appellate court will interfere more reluctantly where the new trial is granted than where it is denied, since in such cases the rights of the parties are not finally settled as they are where the new trial is refused.' "

The trial court charged the jury with respect to the burden of proof as to the validity of the release as follows:

"Now, there has been considerable testimony concerning this instrument and I must charge you that the burden of proving by the preponderance of the evidence that this is a valid release and that the same is such, rests upon the defendant in this case rather than the plaintiff and that is the sole and only factor that must be established by the defendant by a preponderance of the evidence because if you will remember, when I read to you and talked to you about the preponderance of the evidence, I was very careful at that time to mention to you that the matters that were alleged in the plaintiff's declaration and which proof in substance and sustaining the same have been offered, this matter of the validity of the release, the burden of proof of that by a preponderance of the evidence rests upon the defendant and not upon the plaintiff. In other words, the burden of proving that the instrument or release involved was invalid is not a responsibility of the plaintiff to prove."

That this instruction is contra to the decisions of this Court is evidenced by our decision in *Porth* v. *Cadillac Motor Car Co.*, 198 Mich 501.

Federal law in regard to validity of releases under the Federal employers' liability act* is similar to

---

* See 45 USC (1958 ed), § 51.—Reporter.

our State law. The United States supreme court in *Callen* v. *Pennsylvania R. Co.*, 332 US 625 (68 S Ct 296, 92 L ed 242), stated (p 630):

"Until the congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."

*Dice* v. *Akron, C. & Y. Railroad Co.*, 342 US 359 (72 S Ct 312, 96 L ed 398), involved an action by a railroad fireman who was injured when the engine in which he was riding jumped the track. An action was brought in the Ohio State court under the Federal employers' liability act. The purported release, and the ruling by the Ohio supreme court holding that Ohio law and not Federal law governed, were commented upon by the supreme court of the United States as follows (pp 361, 362, 369):

"We  *  *  *  hold that validity of releases under the Federal employers' liability act raises a Federal question to be determined by Federal rather than State law.  *  *  *  Releases and other devices designed to liquidate or defeat injured employees' claims play an important part of the Federal act's administration.  *  *  *  Their validity is but one of the many interrelated questions that must constantly be determined in these cases according to a uniform Federal law.  *  *  *  'One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.' "

We agree with the appellee that: "The validity of the release is an issue which completely controls plaintiff's right of recovery and since the charge of the court in this case was diametrically opposed to

the correct law in this respect, there was reversible error which alone justified the trial court in granting a new trial and justifies this Court in affirming the action of the lower court."

We affirm the order of the trial court and remand for new trial.   Costs to appellee.

CARR, C. J., and DETHMERS, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred.

BLACK and SOURIS, JJ., did not sit.