ARRINGTON v DETROIT OSTEOPATHIC HOSPITAL
CORPORATION (ON REMAND)

Docket No. 132885. Submitted May 21, 1992, at Detroit. Decided
November 2, 1992, at 9:20 A.M. Leave to appeal sought.

Jessie M. Arrington, as personal representative of the estate of
Michael Arrington, deceased, brought a medical malpractice
action in the Wayne Circuit Court against Detroit Osteopathic
Hospital Corporation and others, alleging negligent care of the
decedent while he was undergoing medical treatment following
a gunshot wound. The jury returned a verdict of no cause of
action. The court, William J. Giovan, J., ruled that the verdict
was against the great weight of the evidence and granted the
plaintiff's motion for a new trial. Upon application for leave to
appeal by some of the defendants, the Court of Appeals, GILLIS,
P.J., and HOOD and BRENNAN, JJ., peremptorily reversed the
decision of the trial court. (Docket No. 115807). The Supreme
Court, in lieu of granting leave to appeal, vacated the order of
the Court of Appeals and remanded for plenary consideration.
435 Mich 882 (1990).

On remand, the Court of Appeals *held:*

The trial court did not abuse its discretion in finding that the
verdict was against the great weight of the evidence and
granting a new trial.

1. The trial court properly proceeded under MCR 2.108(E) in
considering the plaintiff's motion for an extension of time to file
the motion for a new trial. MCR 2.611(B), which prescribes the
time during which a party may file a motion for a new trial as
of right, does not limit the authority of a trial court to extend
the time for filing or serving such a motion pursuant to MCR
2.108(E). The court did not err in granting an extension in this
case.

2. The decision regarding a motion for a new trial is commit-
ted to the trial court's discretion. The principal constraint on
the trial court's discretion is MCR 2.611(A)(1)(e), by which a

REFERENCES

Am Jur 2d, New Trial §§ 2, 11, 24-28; Trial §§ 1945, 1955.

Power of court to vacate or modify order granting new trial in civil
case. 61 ALR2d 642.

trial court is empowered to grant a new trial if a verdict is against the great weight of the evidence. Generally, a trial court's determination that a verdict is not against the great weight of the evidence will be given substantial deference by the appellate court, and a trial court's determination that a verdict is against the great weight of the evidence will be given somewhat less deference to insure that the trial court has not invaded the province of the jury. In either situation, however, it is incumbent upon a reviewing court to engage in an in-depth analysis of the record on appeal.

3. The standard involved in reviewing a grant of a new trial is different than that involved in reviewing a summary disposition, directed verdict, or judgment notwithstanding the verdict. The existence of any competent evidence to support the verdict does not compel reversal of a grant of a new trial.

4. The trial court's function with regard to a motion for a new trial is to determine whether the overwhelming weight of the evidence favors the losing party. The appellate court's function is to determine whether the trial court abused its discretion in making such a finding, and not to determine whether the appellate court would have reached the same conclusion as the trial court after a review de novo of the trial court's findings.

5. The trial court did not abuse its discretion in determining that the great weight of the evidence shows that the decedent suffered heavy blood loss between 9:00 P.M., when he entered the defendants' clinic, and 10:00 P.M., and that there was insufficient evidence showing injury to the pulmonary artery. Had there been such an injury, it is conceded that it is likely that the decedent would have died regardless of the nature of the treatment provided by the defendants. On the basis of the evidence presented in the record, the trial court rendered a rational decision in this regard and, consequently, did not abuse its discretion.

Affirmed and remanded for a new trial.

MURPHY, J., dissenting, stated that the evidence supporting the defendants' position was of sufficient weight to justify the verdict of no cause of action and that the trial court exceeded its discretion by invading the province of the jury.

1. MOTIONS AND ORDERS — COURT RULES — NEW TRIAL.

MCR 2.611(B) prescribes the time during which a party may file a motion for a new trial as of right; it does not limit the authority of a trial court to extend the time for filing or serving such a motion pursuant to MCR 2.108(E).

2. Motions and Orders — New Trial — Appeal.

  A trial court's determination with regard to a motion for a new
    trial that a verdict is not against the great weight of the
    evidence is to be given substantial deference by an appellate
    court; a trial court's determination that the verdict is against
    the great weight of the evidence is to be given somewhat less
    deference by an appellate court to insure that the trial court
    has not invaded the province of the jury; in either case, it is
    incumbent upon the appellate court to engage in an in-depth
    analysis of the record on appeal; the standard of review in such
    a case is different than that involved in reviewing a summary
    disposition, directed verdict, or judgment notwithstanding the
    verdict in that the existence of any competent evidence to
    support the verdict does not compel reversal of the grant of a
    new trial.

3. Motions and Orders — New Trial — Appeal.

  The trial court's function regarding a motion for a new trial is to
    determine whether the overwhelming weight of the evidence
    favors the losing party; an appellate court's function is to
    determine whether the trial court abused its discretion in
    making its finding, and not to determine whether the appellate
    court would have reached the same conclusion as the trial
    court after a review de novo of the trial court's findings.

*Karbel, Brukoff, Rothstein, Stewart & Wallace,
P.C.* (by *Jeffrey T. Stewart* and *Ronald M. Roth-
stein*), for the plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney,
P.C.* (by *Anthony G. Arnone, Susan H. Zitterman,*
and *Daniel R. Corbet*), for Detroit Osteopathic
Hospital Corporation, and Doctors Faber, Eichert,
and Haase.

ON REMAND

Before: Shepherd, P.J., and Murphy and P. D.
Houk,* JJ.

Shepherd, P.J. In this medical malpractice case,

* Circuit judge, sitting on the Court of Appeals by assignment.

defendants appeal from the granting of a motion
for a new trial following a jury verdict of no cause
of action. The trial court ruled that the verdict
was against the great weight of the evidence.
Upon defendants' application for leave to appeal,
this Court, GILLIS, P.J., and HOOD and BRENNAN,
JJ., peremptorily reversed the decision of the trial
court pursuant to MCR 7.205(D)(2). (Docket No.
115807.) The Supreme Court, in lieu of granting
leave to appeal, vacated this Court's order and
remanded the case to this Court for plenary con-
sideration. 435 Mich 882 (1990). We affirm and
hold that the trial court did not abuse its discre-
tion when it found that the verdict was against
the great weight of the evidence.

Michael Arrington died while undergoing medi-
cal attention by defendants following a gunshot
wound. There seems to be little dispute that if
Arrington was not experiencing profuse internal
bleeding when he first appeared for medical care,
the procedures followed by defendants were appro-
priate. However, if he was experiencing such
bleeding, he should have been given care of a
different nature and it should have been given
within a short interval after he came under the
care of medical personnel. The single most signifi-
cant factual question at trial, therefore, related to
the extent of Arrington's bleeding when he first
sought medical care and during approximately the
first hour thereafter.

I

Defendants first argue that because plaintiff's
motion for a new trial was served two days after
the expiration of the twenty-one-day period set
forth in MCR 2.611(B), "the circuit court was

without authority to consider, or grant, that motion." We disagree.

The judgment upon the jury's verdict of no cause of action was entered on December 28, 1988. Plaintiff filed his motion for a new trial, brief in support of the motion, and notice of hearing on January 13, 1989. The motion was noticed for hearing on January 20, 1989. After appearing in court to argue the motion, plaintiff's counsel contacted counsel for defendants and learned that defendants had not been served with the motion and other papers. That day, January 20, 1989, plaintiff's counsel effectuated service and filed and served a motion for an extension of time to serve the motion for a new trial, pursuant to MCR 2.108(E). The motion for the extension of time was heard and granted on January 27, 1989 (an order was entered subsequently).

The record below regarding argument concerning this motion is sparse. Plaintiff's counsel argued that because of a miscommunication, counsel's employee failed to deliver the motion in person on January 13, 1989, the day counsel filed it with the court. Defendants concede that the trial court found "good cause" for granting the motion. On appeal, defendants rely on *In re Norwood Estate,* 178 Mich App 345; 443 NW2d 798 (1989), for the proposition that the circuit court was without authority to hear or grant the motion, and that the court should have dismissed the motion as untimely, as was done in *Norwood.*

Initially, we note that no motion for an extension of time was filed in *Norwood.* In this case, defendants fail to address the applicability of MCR 2.108(E) and the propriety of the court's extension of time thereunder. MCR 2.108(E) provides:

A court may, with notice to the other parties

who have appeared, extend the time for serving
and filing a pleading or motion or the doing of
another act, if the request is made before the
expiration of the period originally prescribed. Af-
ter the expiration of the original period, the court
may, on motion, permit a party to act if the
failure to act was the result of excusable neglect.
However, if a rule governing a particular act
limits the authority to extend the time, those
limitations must be observed. MCR 2.603(D) ap-
plies if a default has been entered.

Nothing in the plain language of MCR 2.611(B)
limits a court's authority to extend the time for
filing a motion for a new trial. Accordingly, it
appears that the court properly proceeded under
MCR 2.108(E) in considering the requested exten-
sion of time.

We find no support in *Norwood* for the proposi-
tion that a trial court lacks the authority or
jurisdiction to grant a motion for a new trial after
the expiration of the twenty-one-day period pro-
vided in MCR 2.611(B). Rather, we find that the
Supreme Court, in *Uhrstadt v Sauer Cooperage
Co,* 309 Mich 201, 204; 14 NW2d 834 (1944), re-
jected the contention that it was error for the trial
court to consider a motion for a new trial after the
expiration of the limitation period, applicable to
the motion:

> There is no merit to this contention. Clearly it
> was within the discretion of the trial court to
> grant an extension of time; and since the court
> heard and disposed of the motion on its merits, it
> should be considered that the court in effect ex-
> tended the time for making the motion.

See also *People v Barrows,* 358 Mich 267, 273; 99
NW2d 347 (1959).

In light of the foregoing authorities, we hold

that MCR 2.611(B) prescribes the time in which a party may file a motion for a new trial as of right; it does not limit the authority of a trial court to extend the time for filing or serving such a motion. Inasmuch as defendants do not argue that they were prejudiced by the trial court's extension of time or that the court abused its discretion, we find no error in the trial court's grant of an extension in this case.

## II

Defendants next argue that "it was clear error for the trial judge to set aside the jury's verdict of no cause for action and grant plaintiff's motion for new trial based upon his belief that the verdict was against the great weight of the evidence." The very framing of this issue by defendants ignores, inadvertently or otherwise, the proper standard of review.

It is well known that the decision on a motion for a new trial is committed to the trial court's discretion. The standard of review is not "clear error." However, that discretion is plainly curtailed by various inconsistent appellate pronouncements regarding when a new trial is appropriate. It is apparent from the opinions that these rules often function as standards for reviewing the trial court's exercise of discretion. As often happens, the standard of appellate review and the standard by which the trial court is to act in the first instance have become entangled. If it were possible to address and attempt to reconcile all the conflicting rules in this area it would probably do little good. We can only forge what we believe is the correct path through the most frequently recurring maze of standards and precepts that seem to have applicability to the task at hand.

Virtually every decision in this area starts with the proposition that judicial discretion is involved. See, e.g., *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 (1985):

> The grant or denial of a motion for new trial on the ground that the verdict is against the great weight of the evidence rests within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless a clear abuse is shown.

The next step in the appellate analysis is usually to cite a rule of law that qualifies and limits this grant of discretion to the trial court in an attempt to more precisely explain the real standard to be employed. This is often done by setting forth a test for finding an "abuse of discretion" in the new trial context, apparently because that term standing alone is too amorphous or deferential. The results can be confusing. For example, the standards set forth in *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990), seem to clash:

> A decision on a motion for a new trial is within the discretion of the trial court and will not be overturned absent a clear abuse of discretion. *Stallworth v Hazel,* 167 Mich App 345, 353; 421 NW2d 685 (1988). This Court reviews such a decision to determine whether the jury's verdict was against the overwhelming weight of the evidence. *Troyanowski v Village of Kent City,* 175 Mich App 217, 223; 437 NW2d 266 (1988).

If the second sentence quoted above truly sets forth the standard of review, then appellate review of the trial court's determination regarding the great weight of the evidence is de novo. This

simply cannot be reconciled with the statement that a decision regarding a motion for a new trial is committed to the trial court's discretion and will not be overturned absent an abuse thereof. But *Turner v Eyde* is not an aberration in this respect. See, e.g., *Murchie v Standard Oil Co,* 355 Mich 550, 557-558; 94 NW2d 799 (1959), where, after quoting authority for " 'the general rule that the granting of a new trial rests on the sound discretion of the trial court,' " the Court said: "*we* only grant a new trial when *we* conclude from a review of the evidence that the verdict is manifestly against the clear weight of the evidence." (Emphasis added.)

Of course, in a literal sense, it is contradictory to say (1) that the grant or denial of a motion for a new trial is within the trial court's discretion, *and* (2) that a new trial on the ground that the verdict is against the great weight of the evidence may be granted "only where the verdict is manifestly against the clear weight of the evidence," *Murchie,* or "against the overwhelming weight of the evidence," *Turner v Eyde, supra.* But the standards have been cited side by side so often that they must be read together in some manner (e.g., the trial court has discretion in concluding whether the verdict was against the great weight of the evidence). However, if one views a grant of discretion as "a review-restraining concept" that "gives the trial judge a right to be wrong without incurring reversal," Rosenberg, *Judicial discretion of the trial court, viewed from above,* 22 Syracuse L R 635, 637 (1971), such attempts to marry these seemingly contradictory concepts appear to be nothing more than efforts to give the trial court a limited right to be wrong in determining that the verdict was against the great weight of the evidence. The question then becomes, "How much

discretion does the trial judge have or to what degree do we as an appellate court defer to the trial judge's decision?"

The principal constraint on the trial court's discretion has its current-day source in the court rule by which a trial court is empowered to grant a new trial if a verdict is "against the great weight of the evidence." MCR 2.611(A)(1)(e). It has been observed:

> "It is impossible to describe objectively the standard by which the weight of the evidence is measured in passing on a motion for a new trial. There is no reason to suppose that other verbal formulas would be any more helpful or meaningful than that used in the rule itself—the verdict 'is against the great weight of the evidence.' " [*Thoms v Diamond,* 131. Mich App 108, 118; 346 NW2d 69 (1983), quoting 3 Honigman & Hawkins, Michigan Court Rules Annotated, p 113.]

There is an understandable desire to employ seemingly more tangible phrases than "abuse of discretion" and "great weight of the evidence." Other maxims that may follow these obligatory phrases in appellate opinions include: (1) the trial court may not substitute its judgment for that of the trier of fact, *Humphrey v Bay Refining Co,* 16 Mich App 394, 397; 168 NW2d 314 (1969); (2) credibility is a question for the jury, *Kalamazoo Co Road Comm'rs v Bera,* 373 Mich 310, 314; 129 NW2d 427 (1964); (3) "[w]here there is competent evidence to support the jury's finding, the verdict should not be set aside." *McLean v Wolverine Moving & Storage Co,* 187 Mich App 393, 400; 468 NW2d 230 (1991), citing *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982).

The first two maxims provide wise counsel. The third is more problematic. In this case, defendants,

citing *Doyle Vacuum Cleaner Co v F J Siller & Co,*
55 Mich App 601, 611-612; 223 NW2d 86 (1974),
contend that "where the evidence presents a jury
question," a new trial may not be granted on the
ground that the verdict is against the great weight
of the evidence. This resembles this Court's re-
peated citation of the rule of *Bell, supra* (where
there is competent evidence to support the verdict,
it should not be overturned). These holdings can-
not, however, be squared with other case law
distinguishing between the quantum of evidence
necessary to direct a verdict and the quantum
necessary to grant a new trial. See, e.g., *Thoms v
Diamond, supra,* p 118, quoting 3 Honigman &
Hawkins, Michigan Court Rules Annotated, p 113
("'a discretionary grant of a new trial may be
appropriate, even though there was sufficient evi-
dence to withstand a motion for a directed verdict
—that is, when there was some substantial evi-
dence to carry the issue to the jury.'"); see, also,
*Bridwell v Segel,* 362 Mich 102, 105; 106 NW2d
386 (1960).

In *Bell v Merritt, supra,* p 414, the following was
said without citation of authority:

> Where there is competent evidence to support
> the finding of the jury, its verdict should not be set
> aside. We find no abuse of discretion on the part of
> the trial court. There was evidence to support the
> jury's verdict that defendant was negligent. Under
> such circumstances, the verdict cannot be said to
> be against the great weight of the evidence.

Perhaps the foregoing quote from *Bell* is in part
a truncated version of the following passage from
*Kalamazoo Co Road Comm'rs, supra,* p 314:

> [W]e think that increasingly we must use the
> rule of *Bridwell v Segel, supra,*—credibility is

> primarily a question for the jury. Where there is
> competent evidence to support the finding of the
> jury its verdict should not be set aside and a new
> trial granted *solely because the trial judge would
> weigh and evaluate the evidence differently.* [Emphasis added.]

The difference between *Bell* and *Bera* is subtle but important. Under *Bera,* a trial court may properly exercise its discretion to conclude that a verdict is against the great weight of the evidence and order a new trial even though the evidence was sufficient to withstand a directed verdict; however, the trial court must not assume the role of the factfinder. This rule is much more difficult to apply than the rule implied in the literal language of *Bell.* If *Bell* is the law, then the notion that a trial court has discretion in deciding a motion for a new trial where the motion is based on a claim that the verdict contradicts the great weight of the evidence is a fiction; unless there is no competent evidence to support the verdict, i.e., unless a directed verdict should have been granted, the trial court may not grant the motion for a new trial. We do not read *Bell* and its progeny literally. Instead, we read those cases as incorporating the rule of *Bera* and numerous other decisions of this Court and the Supreme Court that are more faithful to the precept that the great weight question is committed to the trial court's sound discretion, and that distinguish the great weight of the evidence standard from the directed verdict and judgment notwithstanding the verdict standards.

Some of the maxims seeking to define an abuse of discretion, or round out the meaning of "against the great weight of the evidence," have fallen into disuse. For example, it had previously been held with some regularity:

"Even greater latitude is allowed the trial court in granting than in refusing new trials, and the appellate court will interfere more reluctantly where the new trial is granted than where it is denied, since in such cases the rights of the parties are not finally settled as they are where the new trial is refused." [*Hoskin-Morainville Paper Co v Bates Valve Bag Corp*, 268 Mich 443, 450; 256 NW 477 (1934). Citation omitted.]

The rule was called into question by this Court:

How much greater latitude should be allowed is open to question. Whereas granting a new trial does not finally determine the controversy between the parties, it does subject both sides to the additional time and expense of re-litigation. In addition, it has the effect of setting aside a jury verdict in favor of one side, *a step that should not be taken without sound reasons.* [*Benmark v Steffen,* 9 Mich App 416, 421; 157 NW2d 468 (1968) (emphasis supplied). Note how this language is inconsistent with the notion that the trial court has almost unlimited discretion in deciding a motion for a new trial.]

In *Kailimai v Firestone Tire & Rubber Co,* 398 Mich 230, 232-233; 247 NW2d 295 (1976), our Supreme Court quoted *Benmark* with approval and apparently rejected the "conten[tion] that even greater latitude is allowed the trial court in granting than in refusing new trials." See, also, Wright, The Law of Federal Courts (4th ed), § 95, pp 637-638:

If a new trial is denied, the trial judge has accepted the verdict of the jury and there are the most compelling reasons for an appellate court not to interfere. But if a new trial is granted, the verdict of the jury has gone for naught and the appellate court can interfere more freely to resolve the difference between the judge and the jury.

And see 6A Moore's Federal Practice (2d ed), ¶ 59.08[5], pp 59-140—59-141:

> The motion is addressed to the sound discretion of the trial court. . . . However, some [appellate] courts have indicated that, in order to avoid interfering with the fact-finding function of the jury, when a new trial is granted on the ground that the verdict is against the weight of the evidence, appellate review will be more stringent.

Finally, we address one other standard of review that has not been used widely or very recently:

> [W]e approved the following criteria for determining whether, in the case of a new trial grant, there has been a proper exercise of discretion: "[I]f the reasons assigned by the trial judge for his action are legally recognized and the reasons are supported by any reasonable interpretation of the record, he acted within his discretion." [*Willett v Ford Motor Co,* 400 Mich 65, 71; 253 NW2d 111 (1977), citing *Kailimai, supra,* p 233.]

The *Willett/Kailimai* test for abuse of discretion has not been employed in a reported opinion since 1984. See *Mitchell v Daly,* 133 Mich App 414, 428; 350 NW2d 772 (1984).

The vitality of the *Willett/Kailimai* test is to some degree thrown into question by our Supreme Court's 1985 decision in *Bosak, supra,* which does not apply the test. Instead, *Bosak* chooses among the definitions of abuse of discretion and concludes, after a review of the record, that no such abuse occurred.

In the context of a motion for a new trial, the term "abuse of discretion" has been given various definitions. See, e.g., *Patzke v Chesapeake & O R Co,* 368 Mich 190, 194; 118 NW2d 286 (1962), ("no justification or excuse for the ruling"), and *Sloan v*

*Kramer-Orloff Co,* 371 Mich 403, 418; 124 NW2d 255 (1963) (quoting the standard in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias").

The *Bosak* Court selected a third functional analysis of review for abuse of discretion:

> In his concurring opinion in *People v Talley,* 410 Mich 378, 399; 301 NW2d 809 (1981), Justice LEVIN wrote:
> "Thus when a question of abuse of discretion is properly framed, it is incumbent upon a reviewing court to engage in an in-depth analysis of the record on appeal. This Court has, in spite of references to *Spalding,* [*supra*], continued to give full-fledged review to discretionary decisions by carefully weighing the various rights and considerations involved in each type of discretionary decisions." [*Bosak, supra,* p 737.]

Inasmuch as *Bosak* is the most recent of the Supreme Court opinions to address the review of discretionary decisions, it is the *Bosak* standard we shall apply. Also, it appears that, in *Bosak,* the Supreme Court has settled on the most appropriate standard. Perhaps *Spalding* will continue to have applicability in other settings. It is a little-recognized fact that there is more than one standard invoked under the label "abuse of discretion standard of review." Or, perhaps it is recognized, but viewed as impolite to discuss. However, there is no reason not to admit that there are gradations of discretion. See Rosenberg, *supra,* p 650. At one end of the spectrum is unfettered discretion, what Professor Rosenberg has termed "Grade A discre-

tion"—"virtually impervious to appellate overturn —it is unreviewable and unreversible." Rosenberg, *Appellate review of trial court discretion,* 79 FRD 173, 176 (1975). At the other end of the spectrum is "Grade D discretion," which is "the most dilute form of discretion conceivable." *Id.,* p 179. In Professor Rosenberg's example of Grade D discretion, "the court of appeals approached the question as merely a matter of agreeing or disagreeing with the trial judge's determination." *Id.*

Not surprisingly, the entire spectrum is represented in the decisions of the various American jurisdictions dealing with review of motions for new trials. A noted commentator surveyed the standards used by trial courts in passing on such motions grounded on claims relating to the sufficiency of the evidence to sustain the verdict. After discussing the extremes of virtually no deference and unlimited discretion, he remarked:

> In the middle is a large group of cases that use varying adjectives, but agree in general that the trial court should not interfere with the verdict unless it is quite clear that the jury has reached a seriously erroneous result, and that it should not set the verdict aside merely because the court, as finder of fact, would have come to a different conclusion. It may be doubted whether there is any verbal formula that will be of much use to trial courts in passing on motions of this type. Necessarily all such formulations are couched in broad and general terms that furnish no unerring litmus for a particular case. On the one hand, the trial judge does not sit to approve miscarriages of justice. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter. Probably all that the judge can do is

to balance these conflicting principles in the light
of the facts of the particular case. If, having given
full respect to the jury's findings, the judge on the
entire evidence is left with the definite and firm
conviction that a mistake has been committed, it is
to be expected that he will grant a new trial.
[*Wright, supra,* pp 634-635.]

From all of the foregoing, we distill the follow-
ing general rules. A trial court's determination
that a verdict is not against the great weight of
the evidence will be given substantial deference by
the appellate court. A trial court's determination
that a verdict is against the great weight of the
evidence will be given somewhat less deference to
insure that the trial court has not invaded the
province of the jury. In either situation, however,
" 'it is incumbent upon a reviewing court to en-
gage in an in-depth analysis of the record on
appeal.' " *Bosak, supra,* p 737, quoting *Talley,
supra,* p 399 (LEVIN, J., concurring).

In this case, defendants argue that their theory
of defense was not inconsistent with the estab-
lished physical facts of the case, and, therefore,
that the trial court should not have set aside the
jury's verdict of no cause of action as contrary to
the great weight of the evidence. Plaintiff concedes
that if the test is whether there is any competent
evidence to support the verdict, defendants would
be entitled to reversal of the order granting a new
trial "[b]ecause the defendants' evidence, taken
alone, seems to support their expert's opinions,
which in turn support the jury's verdict."

For reasons discussed *supra,* we agree with
plaintiff that the standard used in this case is
different than that involved in reviewing a sum-
mary disposition, directed verdict, or judgment
notwithstanding the verdict, and we are not of the
view that the existence of any competent evidence

to support the verdict compels reversal of the grant of a new trial.

Plaintiff argued at trial that when the decedent went to the Glendale Urgent Care Clinic on May 30, 1984, at 9:00 P.M., after having been shot in the chest with a .357 magnum handgun, defendant Haase should have realized that he was bleeding profusely and would require treatment at Henry Ford Hospital or a similar facility. Plaintiff claimed that this negligence and the failure of defendants to timely administer adequate intravenous fluids, transfuse blood, insert a chest tube, or have a cardiac surgeon present, proximately caused decedent's death at 11:20 P.M. Plaintiff's theory turned upon the allegation that decedent was bleeding continuously throughout his treatment by defendants and that defendants were negligent in failing to treat decedent on the basis of such bleeding.

Defendants' theory at trial is summarized in their brief on appeal:

> It was defendants' theory at trial that the treatment provided to the plaintiff's decedent was entirely appropriate as he was not excessively or continuously bleeding throughout the early portion of his treatment. After the collapsed lung was found on the 9:15 chest x-ray film, appropriate treatment required IV fluids and the insertion of a chest tube to re-expand the lung and assess the amount of blood evacuated from the chest through the chest tube. Until the chest tube was inserted, the plaintiff's condition was stable. Immediately after the insertion of the chest tube by Dr. Eichert, the plaintiff deteriorated rapidly and expired due to sudden, massive bleeding from a pulmonary artery injury.
>
> It was defendants' theory at trial that the bullet, or one of the many fragments of the bullet, lacerated the pulmonary artery or a branch of the

pulmonary artery. While such an injury is gener-
ally immediately fatal, it was defendants' position
that the laceration was compressed by a pool of
blood or by the collapsed lung until the chest tube
was inserted, which evacuated the blood, re-ex-
panded the lung, and allowed the pulmonary-ar-
tery laceration to bleed massively and suddenly.

In granting plaintiff's motion for a new trial, the
trial court referred to certain evidence and ruled:

> The opinions which posited the claim that there
> was not significant blood loss in my view was [sic]
> based largely on speculation which when weighed
> against the direct and positive evidence of a signif-
> icant blood loss during those early stages do not
> compare in weight as to the decision whether
> there was significant bleeding during that time.

The court then noted that "this makes no differ-
ence . . . if the decedent was going to die anyway."
Then the court proceeded to review evidence that
decedent's wound was fatal. The medical examiner
who performed the autopsy testified that he found
no significant injury to the pulmonary artery. The
court noted that defendant's expert, Dr. Bivens,
opined that the pulmonary artery had been seri-
ously injured and that Bivens "was not a fact
witness" and his opinion "was based . . . on the
purported expressions of the opinions of others."
The court continued: "I think according to the
rulings made at trial that those were bases for his
opinions which he was not entitled to use." The
trial court recognized that expert witnesses may
testify on the basis of facts not in evidence, but
pointed out that such supposed facts do not be-
come substantive evidence thereby.[1]

---

[1] This is consistent with MRE 703, which provides:

The trial court continued:

> To account for the fact—for the claim that the pulmonary artery was severed, it was of course necessary to posit a state of facts that would indicate why the plaintiff had not expired at a time much earlier than he did.
>
> This evidence was supplied or this opinion was supplied by Dr. Spitz, asserting a set of circumstances that in the court's view was nothing more than rank speculation, supported presumably by xrays [sic] which—in which he could not demonstrate as supporting this view.
>
> In any event we have direct positive statement by the one person among all of the witnesses in this case who looked at the artery and who said that it had not been injured.
>
> *Mr. Arnone* [*defense counsel*]: Your Honor, with all due respect, I understand, I don't mean to interrupt the court but the witness's testimony was so there probably were some branches that were penetrated. That is Dr. Russenow's testimony. That's not an inference from his testimony. That is the testimony of the man that looked at it, who said the bullet went close to the hilum so that there were some branches that probably were penetrated.
>
> *The Court*: Okay, I don't take that as significant evidence that there was such an injury to this artery to account for a state of affairs that this man was going to die in any event. It seems to me it would have taken an unusual set of circumstances which I agree defendant said that Dr. Spitz tried to account for—to account for the fact that this young and otherwise healthy man was in hospital for an extensive length of time showing vital signs and then expiring at a significant time after he presented himself at this hospital.

---

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence.

I think that this is more than just a difference of opinion particularly with regard to the pulmonary artery. I find it difficult to believe that a jury ought to have accepted or did accept on the evidence presented to it and indeed on this speculation that they should have found, if they did, that the decedent in any event presented a hopeless case because of the fact that he had significant damage to the pulmonary artery.

Despite what quibbles one might make about Dr. Russenow's testimony, the main thrust of this testimony—the only person to see that artery—is that there was not significant damage to it. I think that the verdict was contrary to the great weight of the evidence and that as reluctant as the court is to put the parties through another proceeding as extensive as the last one was, I can't really in good conscience accept the verdict for the reasons I have indicated and more specifically for the reasons adverted to by the plaintiff in argument.

And I think for those reasons it was contrary to the great weight of the evidence.

In light of the above analysis regarding the standard of review to be applied in this case, we conclude that the function of the trial court and the appellate court are not identical. The trial court's function on a motion for a new trial is to determine whether the overwhelming weight of the evidence favors the losing party. Our function as an appellate court is to determine whether the trial court abused its discretion in making such a finding. We do not determine whether we would have reached the same conclusion as the trial court after a review de novo of the trial court's findings. Our conclusion in this case is that the trial court did not abuse its discretion in determining that the great weight of the evidence shows that there was heavy blood loss between 9:00 and 10:00 P.M. and that there was insufficient evidence showing injury to the pulmonary artery. (Had

there been such an injury, it is conceded that it is likely that the decedent would have died regardless of the nature of the treatment.)

In its analysis of the evidence, the trial court concluded:

1. There was extensive injury to the lungs.

2. The decedent came to the emergency room with his shirt saturated with blood and the entrance wound still bleeding.

3. Dr. Coleman (a defendant) said that a 9:15 P.M. chest x-ray showed at least 1500 cubic centimeters of blood in the chest. (Defendants' witness Dr. Bivens testified that a 1000-cc blood loss triggers the need for surgery and massive fluid replacement—procedures that were not performed.)

4. Arterial blood-gas tests done at 9:45 P.M. showed a huge drop in the hemoglobin count.

5. Severe metabolic acidosis was present which, in this case, could only come from blood loss.

6. The decedent was agitated—evidence of shock due to blood loss. (Drs. Bivens and Spitz testified that he could not communicate with such blood loss, yet those on the scene said he did communicate even after his blood pressure dropped to intolerable levels. Bivens testified that agitation is a sign of blood loss. In any event, twenty minutes after he was conceded to be in serious difficulty because of blood loss, he was still talking to the doctors.)

7. With regard to the damage to the pulmonary artery

—if he was bleeding heavily between 9:00 and 10:00 P.M., it is not necessary to posit a pulmonary injury to explain the 3000-cc blood loss that actually occurred.

—the person doing the autopsy testified that the pulmonary artery was not injured.

—no other witness testified regarding firsthand knowledge of such an injury.

Dr. Bivens' testimony was based on hearsay, upon the testimony of a doctor who recanted his testimony and from his circular reasoning that the blood loss must have been from the pulmonary artery because of his first conclusion that the decedent was not bleeding heavily between 9:00 and 10:00 P.M.

Defendants argued that the reason the treatment measured up to the standard of care was because of the fact that there was no severe blood loss between 9:00 and 10:00 P.M., this being the essential question in the case. For us the issue, as indicated above, is whether the trial court abused its discretion when it found that there was overwhelming evidence of substantial blood loss between 9:00 and 10:00 P.M.

Defendants posited the tamponade theory that assumes a tear in the pulmonary artery. Under this theory, a pocket of blood would have closed a hole in the pulmonary artery by pressing on the lung. But this assumes no extensive bleeding between 9:00 and 10:00 P.M., and it also assumes an injury to the pulmonary artery. As indicated, the trial court concluded the overwhelming evidence was to the contrary. After review of the record, we can only conclude that the trial court rendered a rational decision in this regard based upon the evidence presented in the record and, consequently, that the trial court did not abuse its discretion.

We acknowledge that this opinion recognizes that trial courts have considerable latitude in taking away the decision of a jury. The standards enunciated here would apply to cases where the trial court takes away a verdict from a defendant as well as from a plaintiff. The degree of discretion

given to the trial court is not unlimited. Nevertheless it exists, and, for the reasons stated above, we find in this case it was not abused.

Affirmed. Remanded for a new trial.

P. D. HOUK, J., concurred.

MURPHY, J. *(dissenting).* I respectfully dissent. The quoted portion of the trial court's rationale leads me to conclude that the trial court strongly disagreed with the jury's verdict and attached little credibility to defendants' experts. The majority seems to adopt a similar view. This is not enough to justify setting aside a jury's verdict.

The jury rendered a general verdict of no cause of action, which could have been based upon a lack of negligence or a lack of evidence of the proximate cause of death. It was basically undisputed that if there was sufficient injury to the pulmonary artery, it was likely that the decedent would have died regardless of the nature of the treatment. The deposition testimony of Dr. Russenow, introduced at trial, is specific and limited in asserting that the bullet did no damage to the main branch of the decedent's pulmonary artery; Dr. Russenow was not asked, and did not state, his findings regarding whether branches of the pulmonary artery were injured, although he suggested that they almost certainly were, given the location of the wound. On the other hand, plaintiff's own expert witness, Dr. Boruchow, after examining x-ray evidence, concluded that the entire upper lobe of the decedent's right lung, including branches of the pulmonary artery, exclusive of the main pulmonary artery, had been penetrated. Dr. Bivens' testimony was that the effect of an injury to a branch of the pulmonary artery, where this injury was, is identical to the effect of an injury to the

main branch of the pulmonary artery. Thus, the theory of the defense expert was not inconsistent with the physical facts, and it was for the jury to determine which testimony to accept and which to reject.

I am of the view that the evidence in this closely drawn case supporting defendants' position was of sufficient weight to justify the verdict of no cause of action and that the trial court exceeded its discretion by invading the province of the jury. See *Bridwell v Segel,* 362 Mich 102; 106 NW2d 386 (1960); *Cebulak v Lewis,* 320 Mich 710; 32 NW2d 21 (1948). I would reverse the trial court's decision to grant the plaintiff a new trial.