# STATE OF MICHIGAN

# COURT OF APPEALS

COLDWELL BANKER RESIDENTIAL REAL
ESTATE, L.L.C.,

UNPUBLISHED
November 17, 2015

Plaintiff-Appellee,

v

No. 322630
Berrien Circuit Court
LC No. 12-000271-CK

SILVER CREEK PARTNERS II, L.L.C.,
JEFFREY B. NATE, JOHN J. NATE, EDWARD
R. SCHMIDT, and TODD B. FRANKLIN,

Defendants-Appellants.

Before: MARKEY, P.J., and OWENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants Silver Creek Partners II, L.L.C. (SCP), Jeffrey B. Nate, John J. Nate, Edward R. Schmidt, and Todd B. Franklin appeal by right the trial court's judgment in favor of plaintiff Coldwell Banker Residential Real Estate, L.L.C. We affirm.

Jeffrey, John, Schmidt, and Franklin were equal members of SCP, which owned property located on the shore of Lake Michigan in Saint Joseph, Michigan and known as the Ridgeway property. In January 15, 2010, SCP entered into a listing agreement with plaintiff under which plaintiff would make efforts to sell the Ridgeway property on behalf of SCP. Under the agreement, plaintiff was entitled to a commission of $395 plus seven percent of the purchase price if it procured a buyer for the property. Sandra Fenderbosch was a licensed real-estate broker and employee of plaintiff. She was in frequent contact with the members of SCP regarding marketing the Ridgeway property. From January 15, 2010, through December 31, 2011, there were no offers on the property that were satisfactory to SCP. Throughout that time, SCP signed agreements under which the listing agreement was extended.

SCP never executed a written agreement to extend the listing agreement beyond December 31, 2011; however, at Schmidt's and John's request Fenderbosch kept the property listed on the Multiple Listing Service. In March 2012, Fenderbosch sent Schmidt a marketing plan for the Ridgeway property, and he approved it. Fenderbosch met with Jeffrey, John, Schmidt, and Franklin on May 26, 2012. At this meeting, she asked Schmidt to sign an agreement extending the listing agreement, but he did not. Rather, he told her that they were all

-1-

"grownups" and that SCP would pay the commission. Fenderbosch trusted that Schmidt was telling her the truth.

Mark Miller lived across the street from the Ridgeway property and had been interested in purchasing it for some time. In June 2012, Fenderbosch told him that another buyer, Steven Chudik, was interested in purchasing the property. This piqued Miller's interest because he did not want someone to purchase the land and block his access to, and view of, the lake. Miller and several of his neighbors then organized Edgewater Beach and Real Estate, L.L.C. On July 13, 2012, Schmidt emailed Fenderbosch instructions to offer to sell the property to Edgewater for $1,535,000. She did so, and Miller accepted this offer on behalf of Edgewater on July 16, 2012. But after they entered into the agreement, Schmidt told Fenderbosch that SCP could not pay plaintiff a commission because SCP was taking a substantial loss on the sale and the listing agreement had expired.

Plaintiff sued SCP for breach of contract. Plaintiff added Jeffrey, John, Schmidt, and Franklin as defendants because plaintiff alleged that after the sale of the property, SCP transferred $80,000 of the proceeds it received from the sale to Jeffrey, John, Schmidt, and Franklin—i.e., $20,000 to each of them—thus rendering SCP insolvent and unable to pay plaintiff's commission. Plaintiff argued that this transfer was in violation of the Michigan Uniform Fraudulent Transfer Act ("MUFTA"), MCL 566.31 *et seq.*

After a bench trial, defendants moved for involuntary dismissal for lack of evidence. The trial court stated that it would consider the motion. In its written opinion and order, the trial court granted defendants' motion only insofar as it limited recovery from the individual defendants to $20,000 each. The trial court found that Schmidt's July 13, 2012 email to Fenderbosch extended the listing agreement up to and during the time of Edgewater's agreement to purchase the property. The trial court also found that SCP's transfer of $20,000 each to Jeffrey, John, Schmidt, and Franklin was fraudulent under the MUFTA. The trial court ordered each of them to pay $20,000 to plaintiff and ordered SCP liable for the entire commission, $107,845. Defendants moved the trial court for reconsideration. The trial court treated this motion as one for a new trial and denied it. On appeal, defendants do not dispute that SCP breached its contract with plaintiff. Their arguments concern only plaintiff's MUFTA claim.

Defendants first argue that there was insufficient evidence for the trial court to find that the transfers were fraudulent. A claim of constructive fraud under the MUFTA "deems certain transactions fraudulent regardless of the creditor's ability to prove the debtor's actual intent. It applies only to transfers made after the creditor's claim arose." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014). With regard to constructive fraud, the MUFTA states in relevant part as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. [MCL 566.35(1).]

The elements to prove constructive fraud under the MUFTA are: "(1) that the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive 'reasonably equivalent value in exchange for the transfer . . . .' " *Dillard*, 308 Mich App at 446, quoting MCL 566.35(1).

There is no dispute that SCP was liable on a claim to plaintiff and, therefore, was plaintiff's debtor under the MUFTA. MCL 566.31(f). Specifically, the listing agreement provided that plaintiff was entitled to a commission of $395 plus seven percent of the proceeds of the sale of the Ridgeway property. The agreement stated that plaintiff would be entitled to the commission in the event that "[d]uring the term of the listing agreement [plaintiff] or any authorized representative produces a buyer ready, willing and able to purchase, lease or exchange the property, on the terms and conditions set forth herein . . . ." There is no dispute that Fenderbosch emailed Miller an offer on the Ridgeway property on July 13, 2012, and that Miller accepted this offer on July 15, 2012. Therefore, the trial court did not clearly err in finding that SCP's debt to plaintiff under the listing agreement arose on July 15, 2012. MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous."). Indeed, defendants do not dispute this finding.

With regard to the first element of constructive fraud, plaintiff's claim against SCP arose on July 15, 2012. SCP's 2012 federal income tax returns—admitted as exhibits at trial—show that SCP distributed $20,000 to each of the individual members at some time in 2012. Fenderbosch testified that Schmidt told her that SCP lost a significant amount of money from a prior land sale, that it would lose money on the sale of the Ridgeway property, and that it could not afford to pay plaintiff's commission. Schmidt emailed her saying that SCP could not afford to pay the commission. The settlement agreement for the sale of the Ridgeway property shows that SCP received $109,930.71 at the August 31, 2012 sale. Thus, the evidence suggests that SCP had no assets until it received the proceeds of the August 31, 2012 sale, and it stands to reason that SCP lacked funds to transfer $20,000 to each individual member until on or after August 31, 2012. Because plaintiff's claim arose on July 15, 2012 and evidence suggests that SCP made the transfers no earlier than August 31, 2012, the trial court did not clearly err in finding that the transfers occurred after plaintiff's claim arose. *Dillard*, 308 Mich App at 446; MCR 2.613(C).

This conclusion is supported by defendants' admissions in their trial brief that

[a]fter the August 31, 2012 closing on the sale of the Ridgeway property, Silver Creek paid $20,000 to each of its members to repay a portion of the certificates of deposit that had been cashed in by Chemical Bank and retained the remaining funds issued to it at the closing to pay its last expenses.

Thus, defendants explicitly admitted that the transfers were made after July 15, 2012. A party cannot concede something in the trial court and then argue it as error on appeal. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

With regard to the second element of constructive fraud, Fenderbosch's testimony and Schmidt's email to her suggest that SCP was unable to afford to pay plaintiff's commission and

could not be able to pay the commission even after the sale of the property. Therefore, Fenderbosch's testimony and Schmidt's email show that SCP lacked the assets to pay its debt to plaintiff. "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." MCL 566.32(1). We conclude that this evidence supports that SCP could not afford to pay its debt to plaintiff, and so was insolvent after the transfers. MCL 566.32(1). Furthermore, defendants' 2012 tax returns show that the transfers rendered SCP entirely without capital. A "Partners' Capital Account Summary" attached to the forms and included in Exhibit A-31 shows that, after the $20,000 distributions to Jeffrey, John, Schmidt, and Franklin were made, SCP had no capital remaining. Because the tax returns indicate that SCP had less capital after the transfers than it had liabilities, the returns are further evidence that the transfers rendered SCP insolvent. See *Florence Cement Co v Vettraino*, 292 Mich App 461, 471; 807 NW2d 917 (2011). Taken in sum, Fenderbosch's testimony, Schmidt's email, and SCP's tax returns suggest that the transfers rendered SCP insolvent, and the trial court did not clearly err in finding the second element of plaintiff's constructive fraud claim was met. MCL 566.35(1); *Dillard*, 308 Mich App at 446; MCR 2.613(C).

With regard to the third element, the tax returns show that SCP was entirely without capital after the transfers. Indeed, it is undisputed that Jeffrey, John, Schmidt, and Franklin were the sole owners of SCP. The MUFTA will not " 'permit an insolvent debtor to transfer [its] own funds out of the reach of [its] creditors—frustrating or delaying attempts to recover a debt— while still directing the use of those funds toward amenities of [its] choice.' " *Dillard*, 308 Mich App at 462 (citation omitted). Moreover, defendants stated in their trial and appellate briefs that the funds were transferred to Jeffrey, John, Schmidt, and Franklin to reimburse them for collateral that they had given for the loan that SCP used to purchase the property. This supports the trial court's finding that SCP received no value in exchange for the transfers because the transfers did not "secure [] or satisf[y]" a debt of SCP or allow SCP to obtain property. MCL 566.33(1). We are not "left with the definite and firm conviction that" the trial court made a mistake in finding that SCP received nothing of value for the transfers. *Marshall Lasser, PC*, 252 Mich App at 110. Therefore, we conclude that the trial court did not clearly err in finding that the third element of plaintiff's constructive fraud claim was met. *Dillard*, 308 Mich App at 446; MCR 2.613(C).

Defendants' argument that the transfers were not fraudulent because the money transferred was merely to reimburse the individual members for the collateral they provided is without merit. Although there was no evidence at trial that the $109,930.71 was initially derived from the liquidation of their collateral, defendants have provided no authority supporting their argument that this would relieve them from liability under the MUFTA. The settlement statement shows that the money was distributed to SCP as proceeds of the property sale, and the law is clear that a transfer made by a debtor to a creditor whose claim arose before the transfer is fraudulent if the debtor received no value in exchange for the transfer and the transfer left the debtor insolvent. MCL 566.35(1). As discussed, the trial court did not clearly err in finding that the transfers were fraudulent under MCL 566.35(1), including that SCP did not receive value for the fund transfers at issue, MCL 566.33(1).

-4-

Although defendants ask this Court to take judicial notice of the fact that SCP continues to exist, we decline to do so. Defendants have failed to show the relevance of the current status of SCP with regard to determining whether the trial court erred in finding that the transfers were fraudulent under the MUFTA.

Defendants next argue that the trial court erred when it treated their motion for reconsideration as a motion for a new trial. Because defendants failed to preserve this argument, we review it for plain error affecting substantial rights. *Richard v Schneiderman & Sherman, PC* (*On Remand*), 297 Mich App 271, 273; 824 NW2d 573 (2012). Trial courts have authority to treat a party's motion according to what the motion seeks rather than according to how the party labeled the motion. *L & S Bearing Co v Morton Bearing Co*, 355 Mich 219, 224-225; 93 NW2d 899 (1959). After the trial court rendered its opinion and order, defendants moved the trial court for reconsideration under MCR 2.119(F). In their motion, defendants argued that a finding on page 6 of the opinion and order was not supported by any evidence. This finding states as follows: "Following the closing, but prior to January 1, 2013, Defendant LLC wound up its affairs and distributed $20,000 to each individual Defendant without receiving value leaving Defendant LLC without any assets." The trial court held that, because defendants' motion sought "amended findings of fact and conclusions of law and an amended judgment following a nonjury trial[,]" defendants' motion was actually a motion for a new trial under MCR 2.611(A)(2)(c) rather than a motion for reconsideration.

According to the plain language of MCR 2.119(F), defendants' motion could not be a motion for reconsideration. *Decker v Trux R Us, Inc*, 307 Mich App 472, 479; 861 NW2d 59 (2014) (the meaning of a court rule is ascertained by its plain language). MCR 2.119(F) concerns "a motion for rehearing or reconsideration of the *decision on a motion* . . . ." MCR 2.119(F)(1) (emphasis added). But, defendants' motion clearly moved the trial court to alter its findings of fact and conclusions of law with regard to the trial court's opinion and order. Their motion did not move the trial court to reconsider a decision on a motion. Instead, "another rule provide[d] a different procedure for reconsideration of" the trial court's opinion and order. MCR 2.119(F)(1). Specifically, the rule that provided defendants with a procedure for moving the trial court to reconsider its opinion and order was MCR 2.611(A)(2), which allows a trial court to "(a) set aside the judgment if one has been entered, (b) take additional testimony, (c) amend findings of fact and conclusions of law, or (d) make new findings and conclusions and direct the entry of a new judgment." MCR 2.611(A)(2). In their motion, defendants moved the trial court to amend its findings of fact and conclusions of law, and to direct entry of a new judgment in favor of defendants. Therefore, the trial court did not plainly err in treating their motion as one for a new trial under MCR 2.611(A)(2). *Richard*, 297 Mich App at 273. And, because there was sufficient evidence at trial to support the trial court's finding that SCP's transfers were fraudulent, the trial court did not abuse its discretion in denying the motion. *Arrington v Detroit Osteopathic Hosp Corp*, 196 Mich App 544, 550; 493 NW2d 492 (1992) (appellate review of a trial court's decision on a motion for new trial is for an abuse of discretion).

Finally, defendants argue that the trial court abused its discretion by considering Schmidt's deposition when making a determination on defendants' post-trial motion. The trial court explicitly stated that it did not rely on Schmidt's deposition when it ruled on defendants'

motion, but that if it were to consider the deposition testimony, it supported the court's ruling. Defendants' argument is without merit.

We affirm. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Amy Ronayne Krause